## JACHETTA v. SAN PEDRO, LOS ANGELES & SALT LAKE RAILROAD COMPANY.

### No. 2025.   Decided November 8, 1909 (105 Pac. 100).

1. MASTER AND SERVANT—FELLOW SERVANTS—WHO ARE. Employees working under a superintendent in repairing the roadbed of a railroad are not, while being carried by a train to their work, fellow-servants of the train crew; the employees having nothing to do with the operation of the train, nor with making up the train, and the train crew being governed by rules as to the management and operation of trains distinct from the rules under which the employees perform their work. 1   (Page 478.)

2. MASTER AND SERVANT—FELLOW SERVANTS—VICE PRINCIPAL. One having the general control and supervision of railroad repair work and giving general directions respecting the movements of work trains is a vice principal, and not a fellow-servant, of the laborers employed to do repair work.   (Page 481.)

3. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—INSTRUCTIONS. The superintendent of railroad repair work gave directions as to the movements of a train that left box cars on the main track. On the following morning he ordered out a train on which laborers doing repair work were carried to their work, knowing that the box cars were on the track. He knew that the train on which the laborers were riding was being operated in violation of the rules of the railroad, but took no precautions to guard against a collision with the box cars. He knew all about the conditions; but he did not inform the laborers of

───────────

1 Daniels v. Railway Co., 6 Utah 357, 23 Pac. 762; Webb v. Railway Co., 7 Utah 363, 26 Pac. 981; Armstrong v. Railway Co., 8 Utah 420, 32 Pac. 693; Pool v. Southern Pac. Co., 20 Utah 210, 58 Pac. 326; Morrison v. Railway Co., 32 Utah 85, 88 Pac. 998; Stephani v. Southern Pac. Co., 19 Utah 196, 57 Pac. 34.

the danger. *Held* to warrant the court to submit to the jury the question of negligence of the superintendent causing a collision with the box cars. (Page 481.)

4. MASTER AND SERVANT—SAFE PLACE TO WORK—CARE REQUIRED. A master must exercise ordinary care to furnish its servants with a reasonably safe place in which to work and to provide for the reasonable safety of the servants in the course of their employment. (Page 482.)

5. MASTER AND SERVANT—SAFE PLACE TO WORK—CARE REQUIRED. The duty of a railroad to exercise ordinary care to furnish its servants engaged in the work of repairing the roadbed with a reasonably safe place in which to work begins from the time the servants board a train to be carried to their work. (Page 482.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by Nick Jachetta, by Raphael Jachetta, his guardian *ad litem,* against the San Pedro, Los Angeles & Salt Lake Railroad Company.

Judgment for plaintiff. Defendant appealed.

AFFIRMED.

*Pennel Cherrington* and *W. W. Little* for appellant.

*King & Burton* and *Samuel Russell* for respondent.

### APPELLANT'S POINTS.

"*Prima facie,* all servants of a common master employed in running, operating and rendering service with a train of cars are fellow-servants. If there are facts which show that this relation does not really exist between all such servants the burden of showing such facts is on him who seeks to avail himself of the absence or non-existence of such relations. This court cannot take judicial notice of the duties required of or performed by such servants, nor of the degree of supremacy or subordination existing among

them." (*McGowan v. St. Louis & I. M. R. Co.*, 61 Mo. 528; Labatt on Master and Servant, vol. 2. sections 510 and 512.) Conductor O'Chay and the plaintiff were serving the same master, working under the same control, deriving authority and compensation from the same source and engaged in the same general business. They were both engaged in accomplishing the ultimate purpose in view, *i. e.*, rebuilding the washed out railroad and hence were fellow-servants. (*Wonder v. B. & O. R. R. Co.*, 32 Md. 411; *Lebanon Coal & Machine Association v. Zerwick*, 77 Ill. App. 486; *Lindvall v. Woods*, 41 Minn. 212; *Brown v. Winona & St. Peter R. R. Co.*, 27 Minn. 162; *B. & O. R. R. v. Baugh*, 149 U. S. 368, 37 Law Ed. 772; *M. Pac. R. R. Co. v. Hambly*, 154 U. S. 349, 38 Law Ed. 1009; *M. Pac. R. R. Co. v. Peterson*, 162 U. S. 346, 40 Law Ed. 994; *Alaska Mining Co. v. Whelan*, 168 U. S. 86, 42 Law Ed. 390; *New England R. R. Co. v. Conroy*, 175 U. S. 323, 44 Law Ed. 181; *Robertson v. Terre Haute, etc., R. R. Co.*, 78 Ind. 77; *Millsaps v. R. R. Co.*, 69 Miss. 423; *Norfolk & Western R. R. Co. v. Hoover*, 25 L. R. A. 710; *Harley v. L. & N. R. R. Co.*, 57 Fed. Rep. 144.)

Other cases might be cited but it would be a waste of the court's time to read them, as we think that all that has ever been said on the subject is expressed in one way or another in the cases cited. In any event, it would seem that the matter has been settled by this court itself: "The matter of going to and from the camp to the place of work and transporting the materials was as much a part of their work as actually laying the timbers on the bridge." (*Owens v. R. R. Co.*, 32 Utah 213.)

McCARTY, J.

Plaintiff, Nick Jachetta, by his guardian *ad litem*, Raphael Jachetta, brought this action to recover damages for personal injuries sustained by plaintiff in a collision of a train of cars loaded with lumber and bridge timbers, upon which plaintiff was being carried, with two box cars which had been left standing upon defendant's main line of rail-

road track. The complaint, among other things, alleges that defendant carelessly and negligently omitted to place any watchman or lookout upon the front of said train, and upon the forward flat car upon which plaintiff was being carried, and negligently failed and omitted to take reasonable precaution to watch the track in advance of said train, and carelessly and negligently caused said train to run at a high and dangerous rate of speed of more than thirty miles per hour, along and over its track, and to collide with two box cars which defendant had carelessly and negligently left standing upon the main line of its track. The answer of defendant denied all the allegations of negligence set out in the complaint and affirmatively alleged that there was no statute in the state of Nevada at the time of the collision in which plaintiff was injured governing the relation of master and servant, and that the negligence, if any, which caused plaintiff's injuries, was that of his fellow-servants. A trial was had to a jury, who found the issues in favor of the plaintiff and assessed his damages at seven thousand dollars. From the judgment entered on the verdict, defendant has appealed.

The material facts, briefly stated, are about as follows: In the month of February, 1907, plaintiff was in the employ of the Los Vegas & Tonopah Railroad Company in the state of Nevada. The railroad line of defendant passes through Lincoln county, state of Nevada, and at Los Vegas in said county forms a junction with the Los Vegas & Tonopah Railroad. Plaintiff, with about three hundred fellow laborers, all under the direction and supervision of John Conway, who was general foreman and assistant superintendent of construction for the Los Vegas & Tonopah Railroad Company, was engaged in constructing the railroad grade and laying the tracks of said company in the state of Nevada. These laborers, including plaintiff, lived in an outfit train of about thirty cars. On or about February 25, 1907, this outfit train and the laborers mentioned, including plaintiff, were transferred along the line of the Los Vegas & Tonopah Railroad to Los Vegas and there turned

over and delivered to the operatives of the defendant, the San Pedro, Los Angeles & Salt Lake Railroad Company, to be transported along the line of defendant's road to a point where the road had been damaged and rendered impassable for trains by freshets and flood waters. On the 26th and 27th of February, 1907, the outfit train was moved along the line of defendant's road easterly from Los Vegas during which time plaintiff and his fellow laborers worked under Conway on the road repairing the same where it had been damaged by flood waters. Plaintiff and his fellow laborers still remained in the employ of the Los Vegas & Tonopah Railroad Company and were paid by that company for the labor they performed upon the defendant's road. These men, including the plaintiff, were under the direct control and supervision of Conway, who received orders respecting the work that was being performed from R. K. Brown, defendant's engineer of "maintenance of way." Brown, in his testimony, said that he never spoke to the men (referring to the plaintiff and his fellow laborers).

On the evening of February 27, 1907, the outfit train arrived at Leith, a station on defendant's road about eighty miles east of Los Vegas. At this time the following officials of defendant company were at Leith: Mr. Wells, superintendent, Mr. Tilton, general engineer, Mr. W. H. Smith, trainmaster, and R. K. Brown, the engineer in charge of the construction and repair work on defendant's line of road. Mr. Brown had charge of and directed the rebuilding of the washed out roadbed from Leith to the point where the collision occurred. He had general supervision of this outfit train and crew. He directed the movements of the train and gave instructions to John Conway, who was in charge of plaintiff and his colaborers, respecting the work of reconstruction as it progressed. On the night of February 27th, Mr. Brown sent a train loaded with material, in charge of Conductor Frank P. O'Shay, two or three miles east of Leith, and two box cars loaded with ties and bridge timbers were left upon the main track near a point where a bridge had been washed out from one hundred and sixty to two hundred feet from the end of a fifty or sixty degree

curve in a rock cut. The distance from one end of the curve to the other was from twelve hundred to fourteen hundred feet. The two box cars mentioned could be seen from the center of the cut, but could not be seen from a train approaching from the west until the center of the curve was reached. On the morning of February 28th, the defendant company made up a train at Leith consisting of two flat cars, one of which was loaded with lumber, and the other with bridge timbers, pushed by an engine with a caboose attached to the rear of the engine. The bridge timbers were piled about five or six feet high upon the cars. Plaintiff and his fellow laborers, about three hundred in all, under the direction of John Conway, climbed upon these loaded cars to be carried to their work at the washout. This train was in charge of Conductor O'Shay, who had placed the two box cars mentioned upon the main track the evening before. Mr. Spencer, the engineer of this train, had never been over the road east of Leith before, and he was not advised of the presence of the boxcars upon the main track; nor did he receive any special instructions from either the trainmaster or R. K. Brown respecting this work train and the manner in which he should run and operate it on that occasion. Defendant has a book of printed rules which were in force at the time the collision in question occurred. One of these rules provides that, "when cars are pushed by an engine, except when shifting and making up trains in yards, a flagman must take a conspicuous position on the front of the leading car and signal the enginemen in case of need." Another rule provides that, when trainmen leave cars standing on the track, they must protect such cars by a trainman and a flag, and immediately notify the chief train dispatcher. Neither of these rules was observed on the morning of the collision. When the work train pulled out from Leith on the morning of February 28th, there was neither a flag nor a flagman on the train; nor was there any member of the train crew on the front car. O'Shay, the conductor in charge of the train, rode in the cab of the engine with the engineer. The cars were pushed down the

track at a speed of about thirty miles an hour. This rate of speed was maintained until the train collided with the two box cars that had been left standing on the main track the night before. The force of the collision threw the timbers and men, including the plaintiff, from the flat cars to the ground with great force. It is admitted that one of the timbers "hit plaintiff upon the head, inflicting an injury as a result of which his skull was fractured and his nerves and brain injured and the sight of his left eye lost."

The evidence shows that the plaintiff was twenty-six years of age; that prior and up to the time of the accident he was a strong, healthy man, a good workman, and was earning two dollars per day. Since the collision, because of the permanent injuries received therein, plaintiff has been unable to perform work of any kind and has to be watched and cared for by others.

The court, among other things, charged the jury:

"That plaintiff, by voluntarily going upon the train for the purpose of being carried thereon, assumed the risks ordinarily incident to carriage on said flat cars, and you are instructed that plaintiff assumed the risks of injury from the negligence of the locomotive engineer operating said train; but you are instructed that plaintiff did not thereby assume the risk of harm and injury caused by the negligence, if any there was, of the conductor in charge of said train, and, if you find from a preponderance of the evidence that plaintiff's injury was proximately caused by any negligence on the part of such conductor in respect to the operation of said train and as alleged in the complaint, then your verdict must be for the plaintiff."

Appellant complains of this instruction and assigns the giving of it as error. The contention made on behalf of appellant is that Conductor Frank O'Shay, who was in charge of the train, and the men riding on the flat cars, including the plaintiff, were fellow-servants. The record shows that at the time the collision in question occurred there was no statute in force in the state of Nevada defining or regulating the relations of master and servant, and that the rule of the common law as to who are fellow-servants prevailed in that state. There is a conflict in the authorities as to whether

under the common law, a laborer upon a railroad track and the conductor and other employees of moving trains are fellow-servants. The Federal and many of the state courts have either directly held that they are fellow-servants or have so classified employees engaged in the same or different departments, or in different branches of the same department, as to include them in the category of fellow-servants. The authorities, upon the general question as to who are and who are not fellow-servants, are so at variance and are so numerous that it would be useless for us to attempt to classify and review them. We shall therefore confine ourselves to a review of a few of the decisions of this court in which the doctrine of fellow-servants was involved, and a reference to a few decisions of other courts in which the doctrine as declared by this court is illustrated.

In the case of *Daniels v. Railway Company,* 6 Utah 357, 23 Pac. 762, it was held that a car inspector was not a fellow-servant with a train brakeman. In this case the court seems to have followed the rule as announced by the Supreme Court of Illinois in the case of *Railroad Co. v. Kelly,* 127 Ill. 637, 21 N. E. 203. In that case it was decided that a section hand was not a fellow-servant of the engineer of a construction train. In *Webb v. Railway Co.,* 7 Utah 363, 26 Pac. 981, a car repairer was held not to be a fellow-servant of a switch engine crew. So in the case of *Armstrong v. Railway Co.,* 8 Utah 420, 32 Pac. 693, it was held that the foreman of a crew employed in switching cars in the yards of the railway company was not a fellow-servant of a member of another train crew switching cars in the same yards under the direction of another foreman. Likewise, in the case of *Pool v. Southern Pac. Co.,* 20 Utah 210, 58 Pac. 326, in an elaborate opinion by Mr. Justice Baskin, it was held that a car repairer, who was directed to repair a car standing on the track in the company's yards and went under the car for the purpose of making the repairs as directed, was not a fellow-servant of a foreman of a switching crew operating in the same yards. *Morrison v. Railroad Company,* 32 Utah 85, 88 Pac. 998, was a case in which

the defendant, who is also the defendant in the case at bar, was engaged in constructing its line of railroad through the state of Nevada. Morrison was a locomotive engineer and operating one of the defendant's trains known as "work trains, extra," used for the transportation of workmen and material from Caliente, the terminal of the completed portion of the road, to a point where the construction work was being prosecuted. As stated in the opinion, "the country through which the road was building was rough and mountainous, and the right of way lay through many deep canyons, and the curves were long and numerous." The work train on which Morrison was engineer collided with another work train in one of the rock cuts, and Morrison was injured. The evidence tended to show that the collision was due to the negligence of one Branen who was general foreman and trainmaster, in failing to enforce the rules and orders promulgated for the running of these "work trains." At the time of the accident, Branen was on the train with which the Morrison train collided, and knew that the train on which he was riding was being operated in violation of the rules, but did nothing to enforce the rules or to guard against accidents that might occur because of their violation. In that case it was contended on behalf of the company that Branen and Morrison were fellow-servants; but this court held that Branen was a vice-principal, and not a fellow-servant.

Tested by the general rule as declared in these cases, which we have no inclination to depart from, we are clearly of the opinion that plaintiff and the conductor, Frank O'Shay, were not fellow-servants, and that the court did not err in so instructing the jury. Counsel for appellant cites and relies on the case of *Stephani v. Southern Pac. Co.,* 19 Utah 196, 57 Pac. 34. In that case the plaintiff, who was a track walker, and whose duty it was to watch the track, was run down by an engine that was moving at the rate of about ten miles an hour. The court, in commenting upon the facts, says:

"The plaintiff was a common track walker engaged in keeping the track in repair so that trains could pass up and down the road in safety. A wreck having occurred, he was sent ahead by the section boss on a railroad velocipede to notify certain members of the section gang to come and assist in removing the wreck. The engineer and fireman were sent back west.with the engine and tender to reach a turntable so as to turn around and return to assist in removing the same wreck on the same road on which the plaintiff was working. . . . In this case the plaintiff and the engineer were sent on the same errand. They were working to clear the track from a wreck. They both started on the same errand and were working with the same object in view. The plaintiff knew the engine was following him. He was aware of the danger he was in."

And the court says:

"The plaintiff and the engineer were in the same department of labor, working for the same object, under a common master. . . . Each, on entering the service and undertaking to remove the wreck, took the risk of the negligence of the other in performing their respective services."

It will thus be observed that the case was decided upon the theory that at the time of the accident Stephani and the engineer were engaged in the same department of labor, and that Stephani assumed the risks caused by moving trains generally in passing over the road, as one of the ordinary risks and hazards of his employment. In the case under consideration the plaintiff clearly was not employed in, nor was he performing, any service in the same department of labor as the conductor. Neither plaintiff, nor any of his fellow laborers who were riding on the flat cars, had anything whatever to do with the operation or management of the train. They did not load the cars nor help make up the train, and were in no sense attaches of the train either as operatives or laborers. The conductor and the members of the train crew were governed and guided by certain rules and regulations respecting the management and operation of trains which were separate and distinct from the rules and regulations under which plaintiff and his fellow laborers performed their work. That these two crews of men did not work together or in the same department, even temporarily, is conclusively shown by the evidence of R. K. Brown,

under whose direction the repair work of the road was being prosecuted. He said: "I told O'Shay this morning (February 28th) to take these men out to work, and the train was made up under my direction, and the conductor started out at my request. . . . The only instructions were to Conductor O'Shay to take the men to the front and come back." True, plaintiff and his fellow laborers, for the purpose of being carried to their work, and for that purpose only, were, for the time being, under the control of O'Shay; but this did not make them and O'Shay fellow-servants. They neither worked with nor under O'Shay, but were employed in another department separate and distinct from the one in which he was engaged. Another distinguishing feature of the Stephani Case and the case at bar is that in the Stephani Case the injured servant was not under the direction nor subject to the control of the offending servant, nor was one superior to the other, nor was the offending servant performing master's duties. In this case O'Shay, as conductor, was performing master's duties, and the plaintiff was, for the purpose of being transferred to his work, under his direction and subject to his control.

Counsel for appellant also cites and relies on the case of *Owens v. San Pedro, etc., R. R. Co.*, 32 Utah 208, 89 Pac. 825. In that case a gang of workmen of the same grade were pushing a handcar which they had loaded with lumber. The men were working together, and the handcar was one of the implements used by them in performing their work. One of the men used a two inch by four inch scantling for a brake on the car, and in trying to check the speed of the car with this improvised brake the car was thrown off the track. It was held, and correctly so, that the plaintiff assumed the risk, and that the injury resulted from the acts of a fellow-servant. In the case under consideration the men under Conway, including plaintiff, and the train operatives, were engaged in two separate and distinct lines of employment. In the prosecution of the repair work on the road Conway had no authority over O'Shay, the conductor, or any other member of the train crew; nor did O'Shay have any authority over Conway or any of his gang

of laborers, and, as we have hereinbefore observed, neither plaintiff nor any of his fellow laborers had anything whatever to do with operating the train upon which they were being carried to their work when the collision complained of occurred. Therefore the facts in the Owens Case, and the principles therein involved are entirely different from the facts in this case and the questions presented by this appeal.

Appellant also assigns as error the giving of the following instruction to the jury: "You are instructed that the constructing engineer Brown, was not a fellow-servant of plaintiff, but was the vice-principal of the defendant **2, 3** and for whose negligence, if any there was, the defendant is responsible in the same manner and to the same extent as for the acts or omissions of the conductor of the train." Counsel for appellant, in discussing this assignment in his printed brief, says: "This instruction was wrong, in that it allowed the jury to find Brown guilty of negligence, when, as a matter of fact, there is not a word in the record tending to show, or from which the jury could properly find, negligence on his part." The record shows that Brown was a representative of defendant and had general control and supervision of the repair work, and it is admitted that he was a vice-principal, and not a fellow-servant. The undisputed evidence shows that he gave general directions respecting the movements of the work trains east of Leith; that he ordered the train out that left the box cars upon the track the night before the collision occurred; that he also ordered out the train upon which plaintiff and his fellow laborers were carried to their work on the morning of February 28th, well knowing that the box cars referred to were standing upon the track; that he knew this train upon which plaintiff was riding was being operated in violation of the printed rules of the railroad company; that he took no precautions whatever to guard against a collision with the box cars that were left upon the track the night before; that he had been to the washout where the collision occurred many times and knew all about the conditions at

that point; that he did not inform the plaintiff, and the plaintiff did not know, of the dangers to which he was exposed because of the presence of the box cars upon the main track, and the failure of the defendant to take proper precautions to guard against a collision. These facts and circumstances, which are not disputed, fully warranted the court in submitting to the jury the question as to whether Brown was guilty of negligence.

The court also instructed the jury:

"It is the duty of the master to exercise ordinary care and prudence to furnish its servants with a reasonably safe place in which to perform the labor which devolves upon them by virtue of their employment, and generally to provide for the reasonable safety of the servant in the course of the employment, and, if the master fails in the performance of its duty in this particular, it is negligence on the part of the master, and the master is liable to the servant if injury results thereby, if the servant himself is without fault which proximately contributes to his injury."

This instruction contains a correct statement of the law respecting the general duties of a master to use ordinary care to furnish his servants with a reasonably safe place in which to perform the work required of them under their contract of employment. In the present case this duty was imposed upon defendant from the time plaintiff and his fellow laborers boarded the flat cars and placed themselves under the direct control and supervision of O'Shay, the conductor of the train, for the purpose of being carried to their work.

Appellant has assigned several other errors; but we do not deem them of sufficient importance to warrant discussion.

The judgment is affirmed, with costs to respondent.

STRAUP, C. J., and FRICK, J., concur.