2001 UT 2

**UTAH SCHOOL BOARDS ASSOCIATION, Plaintiff and Appellant,**

v.

**UTAH STATE BOARD OF EDUCATION, Defendant and Appellee.**

No. 990296.

Supreme Court of Utah.

Jan. 12, 2001.

Brinton R. Burbidge, Blake T. Ostler, Patrick L. Tanner, Salt Lake City, for plaintiff.

Jan Graham, Att'y Gen., John S. McAllister, William T. Evans, Asst. Att'ys Gen., Salt Lake City, for defendant.

RUSSON, Associate Chief Justice:

¶1 The Utah School Boards Association ("Boards Association") appeals the third district court's summary judgment decision in favor of the Utah State Board of Education ("State Board") declaring the Utah Charter Schools Act [1] constitutional. We affirm.

## BACKGROUND

¶2 In 1998, the Utah Legislature passed the Utah Charter Schools Act (the "Act") as part of the Schools for the 21st Century [2] initiative to better address the individual needs of Utah students. *See* Utah Code Ann. § 53A–1a–502(1). The Act authorized the creation of "up to eight charter schools [in Utah] for a three-year pilot program." *Id.* The charter schools are part of the state's public education system, *see id.* § 53A–1a–502(2), and are meant to contribute to the improvement and customization of public education programs, *see id.* § 53A–1a–401(1).

¶3 Under the Act, the legislature authorized the State Board to act in a supervisory role. The State Board was given the authority to review charter school applications and either approve or deny each one. *See id.* § 53A–1a–505(2)(b). Approved applicants were to work with the State Board in formulating a school's charter that, when signed, served as a contractual agreement. *See id.* § 53A–1a–505(3). The charter may be modified only upon the mutual agreement of the school's governing body and the State Board. *See id.* § 53A–1a–508(4). However, the legislature enumerated in the Act a number of reasons for which the State Board could terminate or refuse to renew a charter. *See id.* § 53A–1a–510. During the term of a charter, a charter school was given certain reporting requirements. These reports were to be sent to the State Board, local school boards, and the legislature. *See id.* §§ 53A–1a–507(4), –509. The State Board also was given the responsibility of developing rules to

provide for specific aspects of charter school funding distribution. *See id.* § 53A–1a–513.

¶4 In August 1998, the Boards Association [3] filed a complaint for declaratory relief against the State Board, challenging the Act's constitutionality. The Boards Association alleged in its complaint that the Utah Constitution limits the authority the legislature may grant to the State Board. The Boards Association asserted that because the state constitution vested the State Board with the "general control and supervision of the public education system," Utah Const. art. X, § 3, the legislature could authorize the State Board to act only for the whole system. Accordingly, the Boards Association claimed that the legislature violated the constitution by passing the Act, which granted local and specific controls to the State Board.

¶5 The State Board denied the Boards Association's allegations and requested that the Act be declared constitutional. The State Board then moved for summary judgment, arguing that the Boards Association had not met its burden of proof in challenging the constitutionality of the Act. The State Board asserted that the Utah Constitution did not preclude it from exercising direct control over specific schools or programs if authorized by the legislature because the greater power expressed by "general control" includes the lesser power of specific control.

¶6 The Boards Association made a cross-motion for summary judgment, arguing that general control and supervision meant universal or central control as opposed to particularized or local control; it meant control and supervision directed only to the whole of the public education system. In March 1999, the third district court granted summary judgment in favor of the State Board, holding that the Act did not violate the state constitution. The Boards Association appealed to this court.

---

1. *See* Utah Code Ann. §§ 53A–1a–501 to –514 (Supp.2000).

2. *See id.* §§ 53A–1a–401 to –404 (Supp.2000).

3. The Boards Association is an organization statutorily recognized to serve as an agent and representative of the school boards of Utah while dealing with activities and problems related to the public education system. *See id.* §§ 53A–5–101, –102 (1997). Membership is voluntary, *see id.* § 53A–5–102, and the State Board as well as local school boards are members.

¶ 7 On appeal, the Boards Association argues that article X, section 3 of the Utah Constitution limits the authority the legislature may grant to the State Board, and that with the Act, the legislature overreached this authority. Specifically, the Boards Association claims that because the state constitution vested the State Board with only general control and supervision over the public education system, the legislature can authorize the State Board to act only in ways that affect the entire system. The Boards Association argues that this restriction prohibits the legislature from authorizing the State Board to act with specific or local supervision and control. The Boards Association avers that the Act unlawfully authorized the State Board to (1) approve or deny charter applications, (2) work with applicants in setting terms and conditions for operation of specific charter schools, (3) terminate a school's charter, and (4) redirect local school district revenues—all controls specific and local in nature.

¶ 8 The State Board counters that the state constitution's grant of general control and supervision cannot reasonably be interpreted as a limitation on legislative power. Instead, the State Board argues that the legislature has plenary powers and that when read in conjunction with the other relevant constitutional provisions the only reasonable inference of the disputed language is that the legislature is restricted from assigning general supervision and control for the public education system to any other agency or official.

## SCOPE OF REVIEW

¶ 9 The power and duty of ascertaining the meaning of a constitutional provision resides exclusively with the judiciary. *See Wadsworth v. Santaquin,* 83 Utah 321, 351, 28 P.2d 161, 172 (1933). The issue of whether a statute is constitutional is a question of law that we review for correctness, "affording no particular deference to the trial court's ruling." *Bd. of Comm'rs v. Petersen,* 937 P.2d 1263, 1266 (Utah 1997). Furthermore, "[a] statute is presumed constitutional, and 'we resolve any reasonable doubts in favor of constitutionality.'" *Id.* at 1267

(quoting *Soc'y of Separationists, Inc. v. Whitehead,* 870 P.2d 916, 920 (Utah 1993)).

## ANALYSIS

¶ 10 The Act clearly grants the State Board specific and local controls. *See* Utah Code Ann. §§ 53A–1a–504, –505, –508 to –510, –513 (Supp.2000). Therefore, the essential question before us is whether the legislature had authority to pass the Act giving the State Board the designated supervisory powers.

¶ 11 The Utah Constitution is not one of grant, but one of limitation. "'The state having thus committed its whole law-making power to the legislature, excepting such as is expressly or impliedly withheld by the state or federal constitution, it has plenary power for all purposes of civil government.'" *Univ. of Utah v. Bd. of Examiners,* 4 Utah 2d 408, 426, 295 P.2d 348, 361 (1956) (quoting *Kimball v. Grantsville,* 19 Utah 368, 383, 57 P. 1, 4–5 (1899)); *see also Spence v. Utah State Agric. Coll.,* 119 Utah 104, 112, 225 P.2d 18, 23 (1950); 16 C.J.S. *Constitutional Law* § 58, at 150 (1984) ("As a general rule, the legislature possesses and may exercise all legislative power, or power to enact statutes, of the state or people of the state, subject only to the limitations or prohibitions imposed by the state constitution."). Therefore, if the legislature is to be "restricted in educational as well as all other matters, it is imperative that the Legislature be restricted expressly or by necessary implication by the Constitution itself." *Bd. of Exam'rs,* 4 Utah 2d at 426, 295 P.2d at 360; *see also Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n,* 953 P.2d 435, 442 (Utah 1997); *Wadsworth v. Santaquin,* 83 Utah 321, 336, 28 P.2d 161, 167 (1933); *State v. Lewis,* 26 Utah 120, 123, 72 P. 388, 389 (1903); 16 C.J.S. *Constitutional Law, supra,* § 58, at 150–51. As a result, the Act at issue must be deemed constitutional unless an examination of the Utah Constitution reveals limitations upon the legislature with respect thereto.

¶ 12 The Utah Constitution provides in relevant part:

The Legislature shall make laws for the establishment and maintenance of a sys-

tem of public schools, which shall be open to all the children of the State and be free from sectarian control.

Utah Const. art. III, ord. 4.[4] Accordingly, article X, which provides for Utah's system of education, states:

> The Legislature shall provide for the establishment and maintenance of the state's education systems including: (a) a public education system, which shall be open to all children of the state; and (b) a higher education system. Both systems shall be free from sectarian control.

*Id.* art. X, § 1. In addition,

> The public education system shall include all public elementary and secondary schools *and such other schools and programs as the Legislature may designate.* The higher education system shall include all public universities and colleges and such other institutions and programs as the Legislature may designate. Public elementary and secondary schools shall be free, except the Legislature may authorize the imposition of fees in the secondary schools.

*Id.* § 2 (emphasis added).

¶ 13 In considering the meaning of a constitutional provision, the analysis begins with the plain language of the provision. *See In re Worthen,* 926 P.2d 853, 866 (Utah 1996). We need not look beyond the plain language unless we find some ambiguity in it. *See id.*

¶ 14 The legislature has plenary authority to create laws that provide for the establishment and maintenance of the Utah public education system. This includes any other schools and programs the legislature may designate to be included in the system. However, its authority is not unlimited. The legislature, for instance, cannot establish schools and programs that are not open to all the children of Utah or free from sectarian

control, and it cannot establish public elementary and secondary schools that are not free of charge, for such would be a violation of articles III and X of the Utah Constitution.

¶ 15 However, the Boards Association argues that it is another provision of the constitution that serves as a restriction on the powers of the legislature as applied to this case. That provision states:

> The *general control and supervision* of the public education system shall be vested in the State Board of Education. The membership of the board shall be established and elected as provided by statute. The State Board of Education shall appoint a State Superintendent of Public Instruction who shall be the executive officer of the board.

Utah Const. art. X, § 3 (emphasis added).[5] The Boards Association contends that the phrase "general control and supervision" restricts the legislature by limiting the authority the legislature may grant to the State Board.

¶ 16 In analyzing the plain meaning of a constitutional provision, the words used must be given their ordinary and " 'commonly understood meaning.' " *State v. Robertson,* 924 P.2d 889, 891 (Utah 1996) (quoting *Nephi City v. Hansen,* 779 P.2d 673, 675 (Utah 1989)); *see also Spence,* 119 Utah at 112, 225 P.2d at 23; *Lewis,* 26 Utah at 128, 72 P. at 391. Therefore, we must look at the ordinary and commonly understood meaning of the words "general control and supervision" to determine the intent of the provision.

¶ 17 As the following evidence provides, the term "general control and supervision" is commonly understood to mean the direction and management of *all* aspects of an operation or business. Shortly after adoption of the Utah Constitution, the legislature understood general control and supervision to

---

4. The ordinances found in article III are irrevocable unless consent is granted by the United States and the citizens of Utah. *See* Utah Const. art. III, pmbl.

5. Section 3 of article X was passed by the convention delegates in 1895 with very little discussion, *see* Utah Constitutional Convention, *Official*

*Report of the Proceedings and Debates of the Convention* 1291 (1895) (approving provision after only discussing manner in which State Board members would be selected), and is essentially unchanged from its original wording. *Compare* Utah Const. art. X, § 3, *with id.* art. X, § 8, 1896 Utah Laws 55 (renumbered 1986).

mean management of *all* aspects of the public education system when it required the State Board superintendent to advise with county superintendents and local school boards "upon *all* matters involving the welfare of the schools." Free School System Act, ch. XLIX, ch. 2, § 4, 1897 Utah Laws 107, 112 (emphasis added). In fact, it is with this understanding that the legislature has also passed the following legislation that grants the State Board specific and local authority (1) to approve or deny applications from individual school districts for school nursing services incentive program monies, *see* Utah Code Ann. § 53A–11–204 (1997); (2) to select particular schools to participate in extended school year programs, *see id.* § 53A–15–103 (Supp.2000); (3) to control and manage applied technology centers, *see id.* § 53A–15–203 (1997); (4) to select particular schools that qualify for additional resources as highly impacted schools, *see id.* § 53A–15–701 (1997); (5) to select a group of rural schools to participate in a modified school week pilot program, *see id.* § 53A–15–801 (Supp.2000); (6) to select an urban school district, specific individual urban schools, and specific individual rural schools to participate in the arts in elementary schools pilot program, *see id.* § 53A–15–901 (Supp.2000); (7) to approve or deny applications from individual school districts for the classification of particular schools as necessarily existent small schools, *see id.* § 53A–17a–109 (Supp. 2000); and (8) to approve or deny applications from individual school districts for alternative language services funding, *see id.* § 53A–17a–131.4 (Supp.2000).

¶ 18 In addition, this court clearly understood general control and supervision to apply to all aspects of an operation when it held the term "is plenary." *In re Woodward,* 14 Utah 2d 336, 339, 384 P.2d 110, 112 (1963) (finding statute unconstitutional that gave general control and supervision over juvenile courts to probate commission).

¶ 19 Analogously, because general control applies to all aspects of an operation or a business, a manager or supervisor exercising general control assumes liability for the actions of an employee. *See, e.g., Lee v. Chevron Oil Co.,* 565 P.2d 1128, 1130 (Utah 1977) (comparing Utah law to Connecticut law and recognizing that principal employer with general control of business was liable for employee's injury); *Kaumans v. White Star Gas & Oil Co.,* 92 Utah 24, 39, 63 P.2d 231, 237 (1936) (holding that appellant, as president and general manager of company in general control and supervision of its business and activities, was liable for injuries incurred by employee's use of equipment); *Jachetta v. San Pedro, L.A. & Salt Lake R.R. Co.,* 36 Utah 470, 481–82, 105 P. 100, 104 (1909) (recognizing that vice-principal's general control and supervision of repair work entailed detailed management, which could warrant finding of negligence and liability for employee's injury); *cf. Salt Lake City v. Schubach,* 108 Utah 266, 278, 159 P.2d 149, 155 (1945) (recognizing that cases generally hold that owner exercising general control of entire building should be liable for pedestrian's injury).

¶ 20 The Boards Association argues that the term "general control and supervision" means that the State Board may be granted authority only to manage the public education system uniformly and universally as a whole. This is unreasonable. It is beyond question that the State Board has always been able to manage separate types of schools and programs differently. For example, the accreditation rules propagated by the State Board for elementary schools are different from those for junior high and middle schools, and the accreditation rules propagated for junior high and middle schools are different from those for secondary schools and special schools. *See* Utah Admin. Code R277–411 to –413. In addition, it is beyond doubt that the State Board can manage vocational programs differently from athletic programs differently from educational programs. *See, e.g., id.* R277–502, –517, –518.

¶ 21 Using the Boards Association's logic, the State Board would have to control and supervise all schools and programs, whether they be elementary or secondary, scholastic or vocational, identically across all classes or types. This would be not only unreasonable but ineffectual. Each class of school and each type of program has specific needs and must be managed to those needs.

¶ 22 From the common and ordinary understanding of the plain language of the Utah Constitution, it is clear that the State Board has been vested with the authority to direct and manage all aspects of the public education system in accordance with the laws made by the legislature. This must include not only the laws regarding the public elementary and secondary schools, but also the laws regarding any other schools and programs that the legislature designates as part of the public education system.

¶ 23 Accordingly, the legislature has used its plenary authority to establish charter schools as a means of pursuing the goal of continually improving and customizing public educational programs. The charter school program is part of the public education system, and the State Board has been given authority to supervise the charter school program in accordance with the Act. Article X, section 3 of the Utah Constitution does not prohibit the legislature from authorizing the State Board to exercise the control and supervision provided in the Act. We affirm the district court's decision that the Act is constitutional.

¶ 24 Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON's opinion.

¶ 25 Chief Justice HOWE concurs in the result.