Dear Representative McAffrey.
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Is the Oklahoma Charter Schools Act ("Act") a special law prohibited by Section 46 of Article V of the Oklahoma Constitution because the Act applies only to charter schools sponsored by school districts, technology center school districts or certain comprehensive or regional institutions with population requirements as provided by statute?
 2. Section 1 of Article XIII of the Oklahoma Constitution delegates to the Oklahoma Legislature the power and duty to establish and maintain a system of free public schools. Does the Act, which allows school districts, technology center school districts or certain comprehensive or regional institutions to sponsor public and private organizations and individuals in establishing charter schools, constitute an unlawful delegation of legislative power?
 3. Under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, states are required to furnish education to all students on an equal basis. Does the Act create a separate and unequal system of education for some students in the state in that charter schools have different levels of accountability, standards and curricula?
 I. INTRODUCTION
The Oklahoma Charter Schools Act ("Act") was enacted by the Oklahoma Legislature in 1999.[1] See 1999 Okla. Sess. Laws ch. 320, §§ 5-18. Section 3-132(D) defines charter schools as public schools established by contract. The Legislature stated the purpose of a charter school is to:
 1. Improve student learning;
 2. Increase learning opportunities for students;
 3. Encourage the use of different and innovative teaching methods;
 4. Provide additional academic choices for parents and students;
 5. Require the measurement of student learning and create different and innovative forms of measuring student learning;
 6. Establish new forms of accountability for schools; and
 7. Create new professional opportunities for teachers and administrators including the opportunity to be responsible for the learning program at the school site.
70 O.S. 2001, § 3-131[70-3-131](A).
The Legislature has provided that a "board of education of a public school district, public body, public or private college or university, private person, or private organization may contract with a sponsor to establish a charter school." 2007 Okla. Sess. Laws ch. 257, § 2(C) (amending 70 O.S. 2001, § 3-134[70-3-134](B)).[2] The applicant seeking to establish a charter school must submit a written application to a proposed sponsor who will either accept or reject sponsorship of the charter school. Id. § 3-134(B), (E). Charter schools are sponsored by a school district, a technical center school district, or certain comprehensive or regional institution and "may consist of a new school site . . . or all or any portion of an existing school site." 2007 Okla. Sess. Laws ch. 257, § 1(A), (E) (amending 70 O.S. 2001, § 3-132[70-3-132](A), (C)).[3]
The sponsor of a charter school shall enter into a written contract with the governing body of the charter school. 70 O.S. 2001, § 3-135[70-3-135] (A). That contract shall contain provisions required by the Act.Id. These contracts are effective for no more than five years from the first day of operation. 2007 Okla. Sess. Laws ch. 257, § 3(A) (amending 70 O.S. 2001, § 3-137[70-3-137] (A)).[4] "A sponsor may terminate a contract during the term of the contract for failure to meet the requirements for student performance contained in the contract, failure to meet the standards of fiscal management, violations of the law, or other good cause."Id. § 3-137(C).
A charter school is required to adopt a charter to comply with a number of specific requirements as delineated in the Act. 70 O.S. 2001, § 3-136[70-3-136](A). There are seventeen requirements which include such mandates as complying with "federal regulations and state and local rules and statutes relating to health, safety, civil rights and insurance"; having nonsectarian "programs, admission policies, employment practices, and all other operations"; providing "a comprehensive program of instruction" and participating in "testing as required by the Oklahoma School Testing Program Act." Id. Except as provided in the Act and in a school's charter, "a charter school shall be exempt from all statutes and rules relating to schools, boards of education, and school districts[.]" Id. § 3-136(A)(5).
A charter school sponsored by a board of education of a school district is "considered a site within the school district in which the charter school is located" for purposes of funding and the "State Board of Education shall determine the policy and procedure for making payments to a charter school." 2007 Okla. Sess. Laws ch. 257, § 4(A) (amending 70 O.S. 2001, § 3-142[70-3-142]).[5]
"For charter schools sponsored by the board of education of a technology center school district or a higher education institution, the State Aid allocation for the charter school shall be distributed by the State Board of Education."Id. "A charter school shall be eligible to receive any other aid, grants or revenues allowed to other schools" and may receive money from sources other than the state. Id. § 3-142(C), (D).
The Act places certain requirements on the State Board of Education. The State Board of Education is required to "issue an annual report to the Legislature and the Governor outlining the status of charter schools in the state." 70 O.S. 2001, § 3-143[70-3-143]. The State Board of Education is also responsible for administering the fund designated to provide financial support to charter schools and is required to adopt rules to implement the provisions of the Act. 70 O.S. Supp.2006, § 3-144.
You ask three specific questions regarding the Act. You first ask whether the Act constitutes a special law prohibited by Article V, Section 46 of the Oklahoma Constitution. You next ask whether the Act violates the provisions of OKLA. CONST. art. XIII, § 1, delegating to the Oklahoma Legislature the power and duty to "establish and maintain a system of free public schools wherein all the children of the State may be educated." You last ask whether the Act violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by creating a separate system of education for those students who attend charter schools.
 II. WHETHER THE OKLAHOMA CHARTER SCHOOL ACT CONSTITUTES A SPECIAL LAW IS A QUESTION OF FACT, WHICH CANNOT BE ANSWERED IN AN ATTORNEY GENERAL OPINION; HOWEVER, A PRESUMPTION OF CONSTITUTIONALITY EXISTS.
You first ask whether the Act violates the provisions of OKLA. CONST. art. V, § 46, prohibiting the passage of special laws.[6] This constitutional provision in pertinent part states:
 The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
 . . . .
 Regulating the affairs of counties, cities, towns, wards, or school districts;
 . . . .
 Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes[.]
Id. The Oklahoma Supreme Court recently spoke to the enactment of special laws in City of Enid v. Public Employees Relations Board,133 P.3d 281 (Okla. 2006). City of Enid considered the issue of whether the Oklahoma Municipal Employee Collective Bargaining Act, which classified municipal employers as municipalities with populations greater than 35,000, was unconstitutional as a special law. Id. at 284. The court defined a special law as one which "relates to `a part of the entire class of similarly affected persons' and `separate[s] [that part] for different treatment.'" Id. at 286 (citations omitted). To determine whether a law is a special law, the court stated that the appropriate inquiry concerns "whether there is a proper and legitimate classification, whether the classification is arbitrary or capricious, or whether it bears a reasonable relationship to the object to be accomplished." Id. at 287.
The court stated that the burden was on the City of Enid, as the one challenging the statute's constitutionality, to demonstrate that the classification of municipalities by population for purposes of the municipal employees' collective bargaining rights was clearly capricious, arbitrary, and wholly unrelated to the object of the Municipal Employees Collective Bargaining Act. Id. at 288. The court considered evidence in the form of affidavits of expert witnesses as to the reasonableness of the classification and ultimately determined that based on the evidence presented the classification was reasonable.Id. Thus, the court found the collective bargaining act was not an unconstitutional special law. Id.
Section 3-132(A) of the Act provides that charter schools shall be sponsored as follows:
 1. By a school district with an average daily membership of five thousand (5,000) or more and which all or part of the school district is located in a county having more than five hundred thousand (500,000) population according to the latest Federal Decennial Census;
 2. By a technology center school district only when the charter school is located in a school district served by the technology center school district and only if the local school district has an average daily membership of five thousand (5,000) or more and which all or part of the school district is located in a county having more than five hundred thousand (500,000) population according to the latest Federal Decennial Census; or
 3. By a comprehensive or regional institution that is a member of The Oklahoma State System of Higher Education only when the charter school is located in a school district that has an average daily membership of five thousand (5,000) or more and which all or part of the school district is located in a county have more than five hundred thousand (500,000) population according to the latest Federal Decennial Census. In addition, the institution shall have a teacher education program accredited by the Oklahoma Commission for Teacher Preparation and have a branch campus or constituent agency physically located within the school district in which the charter school is located.
Id.
You ask whether the Act is a special law, as it applies only to school districts which meet certain population requirements. Under the authority of City of Enid, the question of whether the Act is a special law is not a purely legal question, but is one that requires the consideration of facts to determine whether the classification is capricious, arbitrary and wholly unrelated to the object of the Act. City of Enid, 133 P.3d at 287.
The Legislature specifically provided at Section 3-132(B) that the charter schools formed pursuant to the Act "shall serve as a pilot program to demonstrate the potential of expanding charter schools to other parts of the state." Id. Thus, the Act's limitation to larger cities was intended as a pilot program to test the effectiveness of charter schools. While we can presume the population classification is proper and legitimate and bears a reasonable relationship to the object to be accomplished, the determination of whether the Act is a special law is ultimately a factual question which we cannot answer. 74 O.S. 2001, § 18b[74-18b](A)(5). As the Attorney General is authorized to "give an opinion in writing upon all questions of law submitted to the Attorney General by the Legislature or either branch thereof," we cannot give a definitive opinion on whether the Act is a special law. Id. (emphasis added).
We do note, however, that a legislative act is presumed to be constitutional and will be upheld unless shown to the contrary. SeeFraternal Order of Police Lodge No. 165 v. City of Choctaw,933 P.2d 261,266 (Okla. 1996); Reherman v. Okla. Water Res. Bd., 679 P.2d 1296,1300 (Okla. 1984). "A party challenging the constitutionality of a statue has a heavy burden of showing constitutional infirmity beyond a reasonable doubt." Save Ad Valorem Funding for Students v. Okla. Dep'tof Envtl. Quality, 135 P.3d 823, 826 (Okla. 2006).
 III. THE OKLAHOMA CHARTER SCHOOLS ACT DOES NOT CONSTITUTE A VIOLATION OF THE DELEGATION OF POWERS DOCTRINE, AS THE LEGISLATURE RETAINS AUTHORITY TO ESTABLISH AND MAINTAINA FREE PUBLIC EDUCATION AND HAS PROVIDED STANDARDS FOR CHARTER SCHOOLS TO FOLLOW.
In Oklahoma, the Legislature is responsible for the education of Oklahoma's children. This is made clear in Article XIII, Section 1 of the Oklahoma Constitution, which delegates to the Legislature the power and duty to establish and maintain a system of free public education. That constitutional provision expressly states, "The Legislature shall establish and maintain a system of free public schools wherein all the children of the State may be educated." Id. You ask whether allowing local school districts or technology school districts to sponsor public and private organizations and individuals in the establishment of charter schools violates this provision.
We begin our discussion by noting that the Legislature may not delegate its legislative powers to private organizations or individuals.See Am. Home Prod. Corp. v. Homsey, 361 P.2d 297, 301 (Okla. 1961);Potter v. State, 509 P.2d 933, 935 (Okla.Crim.App. 1973).Potter noted that "[a]ttempted delegation of legislative powers to private persons is repugnant to the due process requirement where it permits arbitrary exercise of powers by such individuals." Id. Thus, we must determine whether the Act constitutes a delegation of legislative power.
In Tulsa County Deputy Sheriff's Fraternal Order of Police v. Board ofCounty Commissioners, 995 P.2d 1124 (Okla. 2000), the Oklahoma Supreme Court discussed the delegation doctrine in general. The question in that case was whether the Legislature improperly delegated its rule-making authority by allowing the county to enter into contracts with private entities for the operation of county prison facilities. Id. at 1127. Although that is not the precise question involved here, the court's analysis is instructive.
The court first commented that the Legislature is not prohibited from delegating power to implement its statutorily mandated policies.Id. at 1128. The court noted that in the context of administrative rule-making the Legislature may delegate the authority to make rules and regulations in the implementation of statutory enactments. Id. The Legislature "must establish [its] policies and set out definite standards for the exercise of any agency's rule making power."Id. (citation omitted)
The court concluded that the Legislature's authority was properly delegated, as the statutory standards applied to county jails whether operated by a county or a private company. Id. at 1130. The court stated that counties remained "ultimately responsible for insuring [sic] that their jails meet legislative and administrative standards. The only difference is that the counties now have the option to contract for private operation." Id. The court commented that as no open-ended delegation was made, the contracts were valid. Id.
The Oklahoma Supreme Court has specifically considered the concept of delegation of legislative powers in the context of public education. InJet-Nash School District No. I-4 v. Cherokee School District No.I-46, 776 P.2d 553 (Okla. 1989), the court recognized its prior holdings that "[t]he Oklahoma Legislature has plenary power with respect to establishment and change of school districts, and may delegate the exercise of that power to subordinate agents under such terms as it deems to be reasonable." Id. at 555. The court noted that "the legislature has chosen to delegate certain of its powers by creating the State Board of Education." Id.
The Oklahoma Legislature did not unlawfully delegate its legislative power in enacting the Act. Rather, the Legislature enacted the Act as part of its lawmaking authority. The Act contains specific standards to be followed by charter schools. For instance, at Section 3-134(B) of Title 70, the Act provides specific procedures for applicants seeking to establish a charter school, detailing what is to be included in the written proposal to be presented to the sponsor. Section 3-135(A) specifically delineates the provisions to be included in a contract to be entered into between the sponsor of the charter school and the governing body of the charter school. Further, at Section 3-136(A), the Act requires a charter that ensures compliance with seventeen specific requirements. Section 3-137 also contains terms for contract renewal and termination. These standards prohibit the type of open-ended delegation that has been condemned by the courts.
The concept of delegation of powers with regard to charter schools has been discussed by courts from other states. The Utah Charter Schools Act was upheld in Utah School Boards Association v. Utah State Board ofEducation, 17 P.3d 1125, 1131 (Utah 2001), against a claim that the Utah Legislature did not have the authority to pass the Charter Schools Act giving the State Board of Education the designated supervisory powers. The Utah Constitution contained language similar to Oklahoma's that states, "The Legislature shall make laws for the establishment and maintenance of a system of public schools, which shall be open to all the children of the State and be free from sectarian control." UTAH CONST. art. III, ord. 4. Another Utah constitutional provision, Article X, Section 1, states:
 The Legislature shall provide for the establishment and maintenance of the state's education systems including: (a) a public education system, which shall be open to all children of the state; and (b) a higher education system. Both systems shall be free from sectarian control.
Id. Further, Utah Constitution Article X, Section 3 contains a provision regarding the State Board of Education, which states that the "general control and supervision of the public education system shall be vested in a State Board of Education." In Utah School Boards Association the Plaintiffs argued Section 3 of Article X prohibited the Legislature from passing legislation granting the State Board the authority to supervise the charter school program, as the Board was authorized to act only for the whole system. Utah School Board Association, 17 P.3d at 1127. The court disagreed, finding:
 Accordingly, the legislature has used its plenary authority to establish charter schools as a means of pursuing the goal of continually improving and customizing public educational programs. The charter school program is part of the public education system, and the State Board has been given authority to supervise the charter school program in accordance with the Act. Article X, section 3 of the Utah Constitution does not prohibit the legislature from authorizing the State Board to exercise the control and supervision provided in the Act.
Id. at 1131.
The California Court of Appeals considered a similar claim regarding California's Charter Schools Act. See Wilson v. State Bd. of Educ., 89 Cal. Rptr.2d 745, 751 (Cal.Ct.App. 1999). In rejecting the claim that California's Charter Schools Act abdicated state control over essential education functions, the court stated:
 Moreover, appellants take too myopic a view of what it means for the state to retain control of our public schools, including charter schools. The Charter Schools Act represents a valid exercise of legislative discretion aimed at furthering the purposes of education. Indeed, it bears underscoring that charter schools are strictly creatures of statute. From how charter schools come into being, to who attends and who can teach, to how they are governed and structured, to funding, accountability and evaluation — the Legislature has plotted all aspects of their existence.
Id. The court further noted that "the Legislature retains ultimate responsibility for all aspects of education, including charter schools."Id.
In Oklahoma, the Legislature used its lawmaking power to adopt statutes governing charter schools. Those statutes authorize public and private organizations to team with school districts, technology schools, or certain comprehensive or regional institutions to further the purposes of education. Those statutes set forth specific standards to be followed in creating and operating charter schools that are part of the public school system. Oklahoma's charter schools are under the control of the Legislature, which not only enacted the statutes implementing the Act, but which retains the authority to amend the Act. Through the enactment of the Act, the Legislature has accomplished its mandate of establishing and maintaining a system of free public education. The Legislature retains the ultimate power to provide a free public education. Therefore, to answer your question, the Act does not violate the constitutional requirement that it is the responsibility of the Legislature to provide a free public education to Oklahoma's children, and does not constitute an unlawful delegation of legislative power.
 IV. THE ACT IS PRESUMED CONSTITUTIONAL AND, AS LONG AS THERE IS A RATIONAL BASIS FOR ITS CLASSIFICATIONS,DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION.
You last ask whether the Act violates the Equal Protection Clause of the United States Constitution, as charter schools have different levels of accountability, standards and curricula than other schools.
The Equal Protection Clause of the United States Constitution, U.S. CONST. amend. XIV, § 1, prohibits those who are similarly situated from being treated differently. If the action in question does not target a suspect or quasi-suspect class or burden a fundamental right, the classification will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313
(1993). Where there are "plausible reasons" for legislative action a court's "inquiry is at an end." Id. at 313-14.
Education is not a fundamental right. See Kadrmas v. Dickinson Pub.Sch., 487 U.S. 450, 458 (1988); San Antonio Indep. Sch. Dist. v.Rodriguez, 411 U.S. 1, 35, 37 (1973). Further, status as a charter school does not qualify as a suspect or quasi-suspect class. See City ofCleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985) (explaining that suspect classes include those based on race, alienage or national origin). Thus, the proper test is whether a rational basis exists for the statutory distinctions. Beach Commc'ns, 508 U.S. at 313; Ross v.Peters, 846 P.2d 1107, 1115 (Okla. 1993).
Oklahoma courts have also recognized that a classification will be considered rationally related to a legitimate purpose if there is any reasonably conceivable state of facts that could justify it. Okla. Ass'nfor Equitable Taxation v. City of Oklahoma City, 901 P.2d 800, 806
(Okla. 1995); see also Ross, 846 P.2d at 1117 ("Where a legitimate state purpose is achieved via a statutory means that does not violate the relatively relaxed standard of minimal rationality, the classification scheme passes constitutional muster."); see alsoCiticorp Sav. Trust Co. v. Banking Bd., 704 P.2d 490, 497 (Okla. 1985) (stating "if there exists any conceivable rational basis for the difference in treatment," the statute is valid).
In Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 314
(1976), the United States Supreme Court characterized this as a "relaxed standard," noting:
 This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. Such action by a legislature is presumed to be valid.
Id. (citations omitted).
Other courts have considered charter schools acts enacted by other states and have found them not to violate the Equal Protection Clause.See Villanueva v. Carere, 85 F.3d 481, 488 (10th Cir. 1996) (stating that the Colorado Charter Schools Act was rationally related to the state's legitimate interest of encouraging innovation in education as stated in the purpose of the Act); Shelby School v. Ariz. State Bd. ofEduc., 962 P.2d 230, 243 (Ariz.Ct.App. 1998) (finding no equal protection violation in requirement for credit check of charter school employee applicants, noting that "[i]t is reasonable for charter schools to be classified differently from non-charter public schools because of the different manner in which they are formed and operated").
The purposes of the Act, put forth by the Legislature, show that the Legislature has an interest in such factors as providing innovative educational opportunities, providing additional academic choices and establishing new forms of accountability. A review of the Act shows that it is rationally related to the furtherance of these legitimate State interests. Thus, a court could conceivably find a rational basis for the Act. In light of the presumption of constitutionality and the relaxed rational basis test, we find no basis for finding the Act unconstitutional on equal protection grounds.
You also raise an implication that the Act may fall within the "separate but equal" doctrine condemned by the Supreme Court more than fifty years ago in Brown v. Board of Education of Topeka, 347 U.S. 483
(1954). That case held that segregation of children in public schools, solely on the basis of race, deprives the children of the minority group of equal educational opportunities as separate educational facilities are inherently unequal. Id. at 493-94. The Act does not segregate children on the basis of race. The Act provides that enrollment is open to any child within a certain geographical area. 70 O.S. 2001, § 3-140[70-3-140](A). If the capacity is insufficient to enroll all eligible students, the charter school shall select students through a lottery selection process. Id. With regard to desegregation, the Act explicitly provides:
 B. A charter school shall admit students who reside in the attendance area of a school or in a school district that is under a court order of desegregation or that is a party to an agreement with the United States Department of Education Office for Civil Rights directed towards mediating alleged or proven racial discrimination unless notice is received from the resident school district that admission of the student would violate the court order or agreement.
Id.
Further, subsection D of Section 3-140 specifically states that "a charter school shall not limit admission based on ethnicity, national origin, gender, income level, disabling condition, proficiency in the English language, measures of achievement, aptitude, or athletic ability." Thus, nothing in the Act supports a finding that admission to charter schools is based on race or any other suspect class as condemned by Brown. Although the Act contains no express prohibited classification, an equal protection challenge could be made if the Act has such a disparate impact on a particular race that a discriminatory purpose could be inferred from the totality of the relevant facts.Washington v. Davis, 426 U.S. 229, 242 (1976). Again, this would require the consideration of particularized facts which is beyond the purview of an Attorney General Opinion. See 74 O.S. 2001, § 18b[74-18b](A)(5).
The Act is presumed to be constitutional. To examine evidence that may rebut the presumption of constitutionality or to question the intent of the Legislature in enacting the statute would involve questions of fact, which must be determined by an appropriate tribunal with the power to apply law to the facts rather than through an Attorney General Opinion.See 74 O.S. 2001, § 18b[74-18b](A)(5).
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Whether the Oklahoma Charter Schools Act, 70 O.S. 2001 Supp. 2006,[7] §§ 3-130 — 3-162, is a special law in violation of OKLA. CONST. art. V, § 46 is a question of fact dependent upon evidence offered in support of the Legislature's rationale for limiting sponsorship of charter schools to certain population requirements. See 74 O.S. 2001, § 18b[74-18b](A)(5). We do note, however, that statutes are presumed constitutional and that the party challenging that constitutionality has the burden of proof in demonstrating unconstitutionality beyond a reasonable doubt. See City of Enid v. Pub. Employees Relations Bd., 133 P.3d 281, 284 (Okla. 2006).
 2. The Oklahoma Charter Schools Act does not violate the doctrine that the Legislature may not delegate its powers to private organizations or persons, as the Legislature retains its authority to provide for a free public education as required by OKLA. CONST. art. XIII, § 1, and as the Act contains specific statutory standards for charter schools. See 2007 Okla. Sess. Laws ch. 257, § 2 (amending 70 O.S. 2001, § 3-134[70-3-134]); 70 O.S. 2001, §§ 3-135[70-3-135], 3-136.
 3. The Oklahoma Charter Schools Act does not on its face violate the Equal Protection Clause of the United States Constitution, as a conceivable rational basis exists for providing different levels of accountability, standards and curricula for charter schools. Whether the presumption of constitutionality may be rebutted is ultimately a factual question which cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
SANDRA D. RINEHART SENIOR ASSISTANT ATTORNEY GENERAL
[1] Since 1991, 40 states, the District of Columbia and Puerto Rico have enacted statutes providing for charter schools. See http://www.uscharterschools.org/pub/uscs_docs/sp/index.htm.
[2] 2007 Okla. Sess. Laws ch. 257, § 2 (amending 70 O.S. 2001, § 3-134[70-3-134]) [hereinafter § 3-134].
[3] 2007 Okla. Sess. Laws ch. 257, § 1 (amending 70 O.S. 2001, § 3-132[70-3-132]) [hereinafter § 3-132].
[4] 2007 Okla. Sess. Laws ch. 257, § 3 (amending 70 O.S. 2001, § 3-137[70-3-137]) [hereinafter § 3-137].
[5] 2007 Okla. Sess. Laws ch. 257, § 4 (amending 70 O.S. 2001, § 3-142[70-3-142]) [hereinafter § 3-142].
[6] The issue of whether the Act constituted a local or special law because its highly restrictive population and average daily membership requirements were an arbitrary and capricious limitation on the Act's application to certain districts was raised in Pentagon Academy, Inc. v. Independent School District No. 1, 82 P.3d 587, 591 (Okla. 2003), but it was not addressed because the case was disposed of on statutory grounds.
[7] This Act was amended in the First Regular Session of the 51st Legislature, we have incorporated those changes in this Opinion. See 2007 Okla. Sess. Laws ch. 257.