343 S.C. 212 (2000)
540 S.E.2d 81
Ex Parte Horace LITTLEFIELD and Jimmy Jeter, Petitioners.
In Re The State of South Carolina, Respondent,
v.
Jack Williams, Respondent.
No. 25210.
Supreme Court of South Carolina.
Heard September 20, 2000.
Decided November 6, 2000.
*215 David L. Thomas, of Wilson, Moore, Taylor & Thomas, P.A., of Greenville, for petitioners.
Solicitor Robert M. Ariail and Assistant Solicitor Mindy L. Hervey, of Greenville County Solicitor's Office, for respondent The State of South Carolina.
Cheryl Aaron, of Greenville, for respondent Jack Williams.
WALLER, Justice:
Horace Littlefield and Jimmy Jeter ("Petitioners") petition this Court for a writ of mandamus pursuant to the Victims' Bill of Rights, S.C. Const. art. I, § 24(B) (Supp.1999).

FACTS/PROCEDURAL HISTORY
During 1996 until his arrest in 1998, Jack Preston Williams, Jr. ("Williams") committed a variety of white-collar crimes against multiple victims in Greenville and Pickens County, which resulted in over $300,000.00 in economic losses for the alleged victims. Petitioner Horace Littlefield ("Littlefield") and Petitioner Jimmy Jeter ("Jeter") lost over $80,000.00 and $70,000.00, respectively, in financial dealings with Williams. The Thirteenth Circuit Solicitor's Office ("Solicitor's Office") reviewed all charges against Williams for prosecutorial merit, sufficiency of the evidence, availability of civil defenses, and potential complications or problems with prosecution in order to determine how to proceed.
Based on this prosecutorial review, the Solicitor's Office determined there was not probable cause to charge Williams with any crime against Littlefield. On numerous occasions, the Solicitor's Office contacted Littlefield and explained why his case was not being prosecuted and advised him of any civil *216 remedies that might be available to him pursuant to S.C.Code Ann. § 16-3-1545 (Supp.1999). The Solicitor's Office also decided not to prosecute Williams for the alleged crimes involving Jeter, and dismissed all charges against Williams where Jeter was a victim.
After convicting Williams at a trial in his absence in August 1998, the Solicitor's Office and Williams' attorney engaged in a plea bargaining process in an effort to resolve the remaining forty charges pending against Williams. On August 30, 1999, Williams pled guilty, pursuant to a plea offer from the Solicitor's Office, to seven counts of forgery, eight counts of breach of trust, three counts of obtaining money or property by false pretenses, two counts of grand larceny, and two counts of altering a certificate of title.[1] Prior to the plea, the Solicitor's Office notified each of the victims identified in the arrest warrants of: (1) the plea offer; (2) the charges that would be dismissed; and (3) the proposed restitution schedule.
On October 7, 1999, Petitioners moved before the circuit court to set aside the guilty plea, arguing they were not notified of the plea prior to the hearing and were denied the right to attend the hearing despite the fact they filled out victim impact statements. Petitioners maintain they did not receive a letter from the Solicitor's Office informing them of the Motion hearing and plea bargain until August 30, 1999, the day of the hearing. In response, the Solicitor's Office, in amicus curiae, submitted that the exclusive remedy afforded the Petitioners was to file a motion pursuant to S.C.Code Ann. § 17-25-326 (Supp.1999). Petitioners amended their Motion arguing the circuit court was without subject matter jurisdiction to accept the guilty plea because the Solicitor's Office did not afford them adequate notice of the plea hearing. In the alternative, Petitioners asked the trial judge to amend the restitution order in which certain victims were placed in a superior position to other victims in violation of S.C.Code Ann. § 17-25-326 (Supp.1999). On October 18, 1999, Petitioners were afforded a full hearing on the merits of their motion.
*217 The trial judge found the court lacked subject matter jurisdiction to entertain the motions based on the Court of Appeals' holding in Reed v. Becka, 333 S.C. 676, 511 S.E.2d 396 (Ct.App.1999). The trial judge specifically held that the court lacked subject matter jurisdiction because: (1) the term of general sessions court during which the plea was entered ended; (2) no arrest warrant or indictment was issued listing Littlefield as a victim; and (3) the indictments listing Jeter as a victim were dismissed. The trial judge further stated that there were other remedies Petitioners could pursue, including obtaining an arrest warrant from law enforcement and pursuing a writ of mandamus.
Petitioners seek a writ of mandamus from this Court. On February 16, 2000, we issued an order requesting that the attorneys brief the following issues:
I. Does an alleged victim have any rights under the Victims' Bill of Rights and S.C.Code Ann. § 16-3-1545 (Supp.1999) when the alleged perpetrator is arrested but not indicted for the crime involving the alleged victim?
II. What relief, if any, are victims entitled to under the Victims' Bill of Rights and S.C.Code Ann. § 16-3-1545 (Supp.1999)?

LAW/ANALYSIS
In the early 1970s, a victims' rights movement emerged in this country. This movement focused on integrating the crime victims' concerns into the criminal justice process.[2] In response to the victims' rights movement, most states enacted statutes that required prosecutors to inform crime victims of all criminal proceedings against their alleged perpetrator. Furthermore, these statutes gave the victim a voice at the critical stages of the criminal justice proceedings. See Tobolowsky, supra.
In response to the victims' rights movement, the South Carolina General Assembly enacted several laws to protect *218 victims' rights, including S.C.Code Ann. § 16-3-1505 (Supp. 1999) and S.C. Const. art. I, § 24(B) (Supp.1999). The General Assembly declared the intent behind section 16-3-1505 was to "ensure that all victims of and witnesses to a crime are treated with dignity, respect, courtesy, and sensitivity." On November 5, 1996, South Carolina citizens overwhelmingly ratified the Victims' Bill of Rights, which ensures victims are informed of their rights and any alternative means that might be available to them if the criminal prosecution is unable to meet their needs.
Under current South Carolina law, prosecutors have more duties toward victims than they have had in the past.[3] Prosecutors must respect the rights granted to the victims by the Victims' Bill of Rights, which includes the right to be informed of and attend any criminal proceeding which is dispositive of the charges where the defendant has the right to be present. The Victims' Bill of Rights also establishes a system through which victims can request services and notification of proceedings held during the criminal prosecution.
However, the Victims' Bill of Rights is not a drastic transformation of the criminal justice system whereby the victim is given control over the solicitor's broad discretion. The criminal justice system gives prosecutors, as opposed to victims, broad discretion in deciding which cases to try because prosecutors are less likely to be prejudiced by personal and emotional motives. The South Carolina Constitution and case law place the unfettered discretion to prosecute solely in the prosecutor's hands. "Prosecutors may pursue a case to trial, or they may plea bargain it down to a lesser offense or they may simply decide not to prosecute the offense in its entirety." State v. Thrift, 312 S.C. 282, 291-92, 440 S.E.2d *219 341, 346 (1994). Furthermore, the Court of Appeals held that while prosecutors have some duties to crime victims, "their prosecutorial discretion is not contracted or limited by victims' rights laws." Reed, 333 S.C. at 676, 511 S.E.2d at 400.[4]
Although prosecutorial discretion is broad, it is not unlimited. The judiciary is empowered to infringe on the exercise of prosecutorial discretion when it is necessary to review and interpret the results of the prosecutor's actions when those actions violate certain constitutional mandates. Id. (citing Thrift, supra). For example, the judiciary may infringe on prosecutorial discretion where the prosecutor bases the decision to prosecute on unjustifiable standards such as race, religion, or other arbitrary factors. State v. Needs, 333 S.C. 134, 508 S.E.2d 857 (1998). The judiciary can also check prosecutorial discretion by dismissing flawed indictments, directing a mistrial of a case wrongfully brought or prosecuted, or granting a directed verdict for lack of credible evidence. Thus, a prosecutor's discretion is constrained by many sources other than the Victims' Bill of Rights.
Petitioners argue that their rights under the Victims' Bill of Rights were violated because they were not informed of the plea bargain, did not know the contents of the plea, and were not informed of the plea hearing. Petitioners maintain that "they are entitled to be informed of a Solicitor's proposal and have a right to be present and to express their views of such a proposed plea." The Petitioners, therefore, seek a writ of mandamus, which: (1) orders the trial court to void the prior plea; and (2) orders the Solicitor to include Petitioners in the new plea bargaining process.

I. Rights of Victim When the Perpetrator is Arrested But Not Indicted for the Crime Against the Victim
Petitioners argue a person's status as a "victim," for purposes of the Victims' Bill of Rights, is not contingent on an indictment for the crime involving the alleged victim. We agree. However, a victim's rights under the Victims' Bill of Rights terminate when the criminal proceedings and the postconviction actions against the alleged perpetrator are resolved.
*220 To have rights under the Victims' Bill of Rights, Petitioners must be a "victim" for purposes of the statute. The Victims' Bill of Rights defines a "victim" as:
[A] person who suffers direct or threatened physical, psychological, or financial harm as the result of the commission or attempted commission of a crime against him. The term "victim" also includes the person's spouse, parent, child, or lawful representative of a crime victim who is deceased, who is a minor or who is incompetent or who was a homicide victim or who is physically or psychologically incapacitated.
S.C. Const. art. I, § 24(C)(2) (Supp.1999).
Under this expansive definition of "victim," a person becomes a victim the instant the crime is committed or attempted and he or she suffers a harm. However, a victim's rights change during the course of a criminal proceeding. For example, a victim has rights regardless of indictment, because some rights occur prior to indictment. Prior to indictment, a victim under the Victims' Bill of Rights has the following rights: (1) the right to be treated fairly; (2) the right to be informed when the accused is arrested, released from custody, or has escaped; (3) the right to be informed of any criminal proceedings which are dispositive of the charges against the accused; (4) the right to be informed of a hearing affecting bond or bail; and (5) the right to be protected from the accused or persons acting on his behalf. If the case proceeds through indictment, the victim gains more rights.[5]
A victim has the right to be involved in the criminal process concerning the specific charge related to that victim. According to the Victims' Bill of Rights, a victim has the right *221 to "be informed of and present at any criminal proceedings which are dispositive of the charges where the defendant has the right to be present." S.C. Const. art. I, § 24(A)(3) (emphasis added). The defendant would not have the right to be present on a matter that does not concern him. Likewise, a victim would not have a right to be informed or be present in any matter of which he is not the victim. If the Victims' Bill of Rights was interpreted to include every victim, regardless of the disposition of the particular charge involving that victim, prosecutors would have an enormous burden because the class of victims would include all persons who merely suffered harm by a defendant.
Once a criminal case has been resolved and the defendant is sentenced, the alleged victim loses his victim status under the Victims' Bill of Rights. The trial court cannot use the Victims' Bill of Rights to re-open a completed criminal proceeding. Further, even if the solicitor fails to honor the Victims' Bill of Rights during a criminal proceeding, this Court cannot issue a writ of mandamus to re-open a criminal proceeding once it is resolved.
Because Petitioners' cases were not contained within the guilty plea resolution, they were not victims with the rights to notice and attendance at the plea bargain. For example, Littlefield is not a victim as identified on any arrest warrant or charge against Williams. Littlefield argues that he is a victim because Williams enticed him into a scheme whereby he lost over $82,000.00. According to the Solicitor's Office, Littlefield's case lacked sufficient evidence because there was inadequate paperwork to substantiate the alleged crime and there was no probable cause. The Solicitor's Office fully advised Littlefield of the option to pursue a civil suit against Williams. The Solicitor's Office also repeatedly informed Littlefield for over a year that Williams was sentenced to a term of incarceration, that the prior terms of the initial plea offer were no longer possible, and that he would not be included in any restitution process. Since the plea date, Littlefield has called the Solicitor's Office requesting details of Williams' plea and sentence and the Solicitor's Office has provided an explanation of the impact of sentencing and restitution. The Solicitor's Office afforded Littlefield all of the rights granted to him by the Victims' Bill of Rights.
*222 Based on prosecutorial review, the Solicitor's Office dismissed the case against Jeter due to inability to prosecute. The Solicitor's Office maintains they informed Jeter, via telephone, that they were not going to pursue a criminal prosecution against Williams for the alleged crimes against him. Because the indictment based on Jeter's complaint was dismissed, there was no proceeding for the Solicitor's Office to notify him to attend. The Solicitor's Office, therefore, complied with the Victims' Bill of Rights in this matter.

II. Victims' Relief under the Victims' Bill of Rights
Petitioners argue that the proper relief under the Victims' Bill of Rights is the issuance of a writ of mandamus voiding Williams' prior plea bargain and ordering the Solicitor's Office to include them in consideration of the new plea bargain. We disagree.
The rights granted to a victim by the South Carolina Constitution and statutes are enforceable by a writ of mandamus, rather than through direct participation at the trial level. Reed, supra. Petitioners seek a writ of mandamus pursuant to the Victims' Bill of Rights, which states:
Nothing in this section creates a civil cause of action on behalf of any person against any public employee, public agency, the State, or any agency responsible for the enforcement of rights and provision of services contained in this section. The rights created in this section may be subject to a writ of mandamus, to be issued by any justice of the Supreme Court or circuit court judge to require compliance by any public employee, public agency, the State, or any agency responsible for the enforcement of the rights and provisions of these services contained in this section, and a wilful failure to comply with a writ of mandamus is punishable as contempt.
S.C. Const. art. I, § 24(B) (Supp.1999) (emphasis added).
Mandamus is the highest judicial writ and is issued only when there is a specific right to be enforced, a positive duty to be performed, and no other specific remedy. Willimon v. Greenville, 243 S.C. 82, 132 S.E.2d 169 (1963). A writ of mandamus is a coercive writ that orders a public official to perform a ministerial duty. Plum Creek Dev. Co. v. *223 City of Conway, 334 S.C. 30, 512 S.E.2d 106 (1999). The primary purpose of a writ of mandamus is to enforce an established right and a corresponding imperative duty created or imposed by law. Willimon, supra. When the legal right is doubtful, or the performance of duty rests in discretion, or when there is another adequate remedy, a writ of mandamus cannot rightfully be issued. In the Interest of Lyde, 284 S.C. 419, 327 S.E.2d 70 (1985). "If doubt or uncertainty exists in the facts of the case, so that it does not appear clear that such facts entitle plaintiff to relief by mandate, under any valid law, the writ [of mandamus] will not issue." Willimon, 243 S.C. at 87, 132 S.E.2d at 171. A writ of mandamus is improper in this situation because Petitioners do not retain their legal rights as victims pursuant to the Victims' Bill of Rights after the Solicitor's Office decided not to prosecute their cases.
A writ of mandamus might provide relief to Petitioners if this case were still active. For example, if the trial court had not imposed a sentence in this case, this Court could issue a writ of mandamus ordering the Solicitor's Office to notify Petitioners of all subsequent criminal proceedings. However, the instant case has been resolved. Petitioners are likely unhappy with Williams' sentence or the restitution ordered. Petitioners do not have a remedy in this matter because this Court cannot order the trial court to re-open this case so Petitioners can attend the plea hearing. A writ of mandamus under the Victims' Bill of Rights is reserved to enforce its provisions, not to re-open a case when a victim is unhappy with its outcome.[6]

CONCLUSION
Based on the foregoing, we DENY Petitioners' motion for writ of mandamus.
TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.
NOTES
[1] Williams was given a five year sentence, consecutive to two other sentences he previously received, and an additional sentence of ten years suspended to five years' probation served upon his release. He was also ordered to pay restitution to three victims during his probationary period, and signed a confession of civil judgment with regard to seven other victims.
[2] See Peggy M. Tobolowsky, Victim Participation in the Criminal Justice Process: Fifteen Years After the President's Task Force on Victims of Crime, NEW. ENG. J. ON CRIM. & CIV. CONFINEMENT 21 (Winter 1999).
[3] For example, under section 16-3-1545, prosecutors must provide and assist victims with victim impact statements; inform victims of the applicable criminal procedures; inform victims of their right to counsel; inform victims of financial assistance, compensation, and fees to which they are entitled; make a reasonable attempt to keep victims informed of the status of their case; confer with victims about the disposition of their case, including plea negotiations; notify victims of each hearing, trial, or other proceeding; intercede with employers when necessary; refer any threats against the victim to law enforcement; minimize inconvenience; and refer victims to counselors when necessary.
[4] In Reed, the Court of Appeals held the rights of a victim under the Victims' Bill of Rights did not grant her the power to veto a proposed plea agreement.
[5] For example, when a defendant is indicted on a charge against a victim, that victim would gain the following rights: (1) the right to be informed of and present at any criminal proceedings which are dispositive of the charges where the defendant has the right to be present; (2) the right to be reasonably informed of and be allowed to submit either a written or oral statement at all hearings affecting bond or bail; (3) the right to be heard at any proceeding involving a post-arrest release decision, a plea, or sentencing; (4) the right to confer with prosecution before the trial; (5) the right to reasonable access to all documents relating to the crime against the victim before trial; (6) the right to prompt and full restitution; (7) the right to be informed of any postconviction action; and (8) the right to a reasonable disposition and prompt and final conclusion of the case. See S.C. Const. art. I, § 24.
[6] See generally Thad H. Westbrook, Note, At Least Treat Us Like Criminals!: South Carolina Responds to Victims' Plea for Equal Rights, 49 S.C. L. REV. 575, 585 (Spring 1998) (stating that a writ of mandamus would not apply to a solicitor after the case is closed because Victims' Bill of Rights provides that: "[t]he rights created ... may be subject to a writ of mandamus ... issued ... to required compliance.") (emphasis added).