2002 UT 29

**STATE of Utah, Plaintiff and Appellee,**

v.

**Patrick William CASEY, Defendant and Appellee,**

**M.R. By and Through His Guardian, Cynthia F. Casey, Appellant.**

No. 20001067.

Supreme Court of Utah.

March 12, 2002.

Mark L. Shurtleff, Att'y Gen., J. Frederic Voros, Jr., Asst. Att'y Gen., Salt Lake City, for plaintiff Walter F. Budgen, Jr.

Tara L. Isaacson, Salt Lake City, for defendant.

Paul G. Cassell, Douglas E. Beloof, Gina McClard, for appellant.

DURRANT, Justice.

¶ 1 The central issue presented in this appeal is whether the district court deprived M.R., a victim of sexual abuse, of his constitutional and statutory right to be heard at defendant's change of plea hearing. At that hearing, defendant pleaded guilty to lewdness involving a child, a class A misdemeanor. He had previously been charged with aggravated sexual abuse of a child, a first degree felony, and had pleaded not guilty. The reduction in the charge was the result of a plea bargain negotiated between defendant and the State. Prior to the change of plea hearing, M.R.'s mother had advised the prosecutor of M.R.'s and her own desire to make a statement to the court. M.R. and his mother both attended this hearing and, during a recess, M.R.'s mother reiterated to the

prosecutor that she and M.R. wished to be heard. The prosecutor did not, however, advise the court of this request. In addition, neither M.R. nor his mother petitioned the court directly for an opportunity to speak. Unaware of M.R.'s request to be heard, the court accepted the defendant's guilty plea to the reduced charge and set the matter for sentencing.

¶ 2 Following this change of plea hearing, M.R.'s mother, acting on behalf of M.R., obtained legal assistance and filed two motions to set aside the plea bargain. In response, the State and defendant filed separate motions to strike M.R.'s pleadings. At the sentencing hearing, the district court heard from M.R. and his mother regarding the appropriateness of the plea bargain, and permitted argument from M.R.'s counsel. Thereafter, the court "informally reopen[ed] the plea for the purpose of [accepting M.R.'s and his mother's] testimony." The court then accepted the testimony that it had just heard. Having accepted M.R.'s and his mother's testimony, the court "reaffirm[ed defendant's] plea at the class A level." The court then denied both of M.R.'s pending motions and sentenced defendant to eight months in jail on the class A misdemeanor charge. Based on these facts, we conclude that M.R. was initially denied his right to be heard at the change of plea hearing in violation of the Utah Constitution and related statutes, but that the court thereafter remedied this violation by reopening the change of plea hearing and receiving testimony from M.R. and his mother, and permitting argument from M.R.'s counsel. We therefore affirm.

## BACKGROUND

¶ 3 On November 3, 1999, the Tooele County Attorney's Office charged defendant with aggravated sexual abuse of a child, a first degree felony, in violation of section 76–5–404.1(3) of the Utah Code. Following a preliminary hearing in which both the victim,

M.R., and his mother testified, the district court bound defendant over for trial.

¶ 4 A few weeks later the prosecutor handling defendant's case sent M.R.'s mother a letter explaining that defendant had requested a plea bargain. After receiving this letter, M.R.'s mother, according to her affidavit, met with the prosecutor and obtained an assurance that the first degree felony charge would not be reduced due to the strong evidence of guilt compiled against defendant.

¶ 5 Nevertheless, the prosecutor subsequently offered to reduce the first degree felony charge to lewdness involving a child, a class A misdemeanor, in return for a guilty plea. *See* Utah Code Ann. § 76–9–702.5 (1999). M.R.'s mother, upon learning of the State's extension of this offer and defendant's acceptance, contacted the prosecutor and expressed a desire to tell the district court how her family, including M.R., felt about the proposed plea. The prosecutor advised her to attend the change of plea hearing scheduled for October 24, 2000.

## I. CHANGE OF PLEA HEARING

¶ 6 M.R. and his mother appeared at this change of plea hearing as directed. At a recess during this proceeding, M.R.'s mother approached the prosecutor, objected to the reduced charge, and reiterated M.R.'s, and her own, desire to make a statement.[1] She later testified that she believed the prosecutor was going to inform the district court of her request. Acknowledging that he did not know that M.R. had a right to be heard either directly or through his legal guardian, the prosecutor maintained the following: (1) he did not intentionally deprive M.R. of his right to be heard at defendant's change of plea hearing, (2) he did not tell M.R.'s mother she and M.R. had no right to testify at the plea hearing, and (3) he told M.R.'s mother that she would eventually have an opportunity to address the court in the pre-sentence report and at the sentencing hearing.

---

1. For the purposes of this appeal, we assume that the prosecutor received the request to be heard from M.R.'s mother at defendant's change of plea hearing. We make this assumption because none of the parties to this appeal disputes this

claim and the prosecutor admitted in a letter that he was "cognizant" of the fact that M.R.'s mother wished to address the court at defendant's change of plea hearing.

¶ 7 Notwithstanding his conversations with M.R.'s mother, the prosecutor did not inform the district court that M.R. and his mother had requested to be heard at the change of plea hearing. M.R. and his mother also failed to bring the issue to the court's attention. The court therefore proceeded with defendant's change of plea hearing unaware of M.R.'s request. Noting the "dramatic" reduction in the charge, the court refused to be limited to the four-month sentence recommended in the stipulated plea agreement. The State and defendant responded to the court's concern by agreeing to delete the stipulated sentence provision. The court then accepted defendant's guilty plea to the class A misdemeanor charge and set the matter for sentencing.

## II. SENTENCING HEARING

¶ 8 Subsequently, M.R.'s mother, acting on behalf of M.R., obtained legal assistance and filed two motions with the district court: a motion for a misplea and a motion to reject the plea bargain. In response, the prosecutor and defendant filed separate motions to strike M.R.'s pleadings, claiming that M.R. lacked standing to set aside the plea because he was not a party to the criminal proceeding.[2]

¶ 9 Without ruling on whether M.R. had standing to challenge defendant's guilty plea, the district court held defendant's sentencing hearing on November 27, 2000. At the start of this hearing, M.R.'s counsel moved the court to set aside the accepted plea. The court initially questioned whether M.R. had the right to be heard but then allowed M.R. and his mother to testify regarding the propriety of the plea bargain. Despite its reservations, the court also permitted extensive argument from M.R.'s counsel.

¶ 10 M.R. and his mother testified that the court should have rejected the plea bargain. Specifically, M.R. declared, "I don't think it's right that [defendant] gets that less of a plea agreement because [of] what he's done[.]

He's done it to me ... and ... he's hurt my whole family." M.R.'s mother testified that "the [c]ourt should reject the plea bargain [because] a misdemeanor sentence d[id] not truly reflect the seriousness of the offenses committed by [defendant] the same way that a felony conviction would."[3] She further averred that she believed the prosecutor was going to inform the court of M.R.'s, and her own, desire to make a statement at defendant's change of plea hearing. She also stated that she did not know she could interrupt the change of plea hearing and address the court directly.

¶ 11 After M.R. and his mother had testified, the district court turned its attention to M.R.'s attorney and inquired whether M.R. was entitled to use counsel to assert his right to be heard. In response to the court's query, M.R.'s counsel argued that the Victims' Rights Amendment of the Utah Constitution placed M.R. on equal footing with defendant and envisioned that M.R. could employ an attorney in exercising his legal rights. M.R.'s counsel then argued that (1) M.R. had the right to be heard before the court's acceptance of defendant's plea, (2) M.R.'s right to be heard had been violated, and (3) the court should grant a misplea and hear from M.R. before accepting any subsequent plea between the State and defendant. The prosecutor and defendant both objected, asserting that M.R. lacked standing to challenge the accepted plea and that the prosecutor had discretion to determine how defendant's case was negotiated.

¶ 12 Following these objections, the district court noted that it had not been previously informed by M.R. or his representative, i.e., his mother, that M.R. desired to be heard at the change of plea hearing. Despite this lack of notification, the court decided to "informally" reopen the plea hearing in order to accept the testimony that it had just heard from M.R. and his mother. Having accepted this testimony, the court "reaffirm[ed defendant's] plea at the class A level." The court

2. Although the prosecutor moved to strike M.R.'s pleadings, he later moved to reopen the plea hearing.

3. As part of her argument that the plea bargain should be rejected, M.R.'s mother discussed the impact defendant's abuse had on M.R. and the effect defendant's conduct had on her three other children.

then denied both of M.R.'s pending motions, sentenced defendant to eight months in jail on the class A misdemeanor charge, and fined him.[4]

### III. CLAIMS ON APPEAL

¶ 13 M.R. immediately appealed to the Utah Court of Appeals, which certified M.R.'s appeal to us, concluding that a "petition for writ of certiorari would likely be ... granted [because] resolution of the case ha[d] potentially broad-reaching impact." *See* Utah R.App. P. 43(c)(1).

¶ 14 On appeal, M.R., by and through his legal guardian, contends that (1) he had the right to seek appellate review of the district court's adverse rulings on his two motions, (2) he had the right to be heard through counsel with respect to legal issues related to the constitutional and statutory rights afforded him as a victim, (3) he had a constitutional and statutory right to be heard regarding the appropriateness of the plea bargain, (4) he properly invoked his right to be heard at defendant's change of plea hearing by submitting a request to the prosecutor, and (5) the court, through the negligence of the prosecutor, denied him his right to be heard by accepting the plea bargain without hearing from him.

¶ 15 The State agrees with M.R. on several issues, including the following: (1) a crime victim may seek appellate review of decisions affecting his or her rights as a victim, (2) a crime victim may employ counsel in exercising his or her constitutional and statutory rights, and (3) a crime victim has a constitutional and statutory right to be heard upon request at a change of plea hearing. The State argues, however, that M.R. waived his right to be heard when he failed to assert this right at the change of plea hearing. The State also maintains that the court cured any violation by "informally reopen[ing]" defendant's plea, accepting the testimony regarding the propriety of the plea that had been offered earlier in the sentencing hearing by M.R. and his mother, allowing argument by M.R.'s counsel, and reaffirming the plea at the class A misdemeanor level. Further, the

State asserts that even if M.R.'s right to be heard was violated, a misplea is not an available remedy under sections 77–38–11 and 77–38–12 of the Rights of Crime Victims Act.

¶ 16 Defendant asserts that M.R. lacks standing to seek appellate review on all of these issues. Like the State, he also claims that the Utah Code precludes us from declaring a misplea. He further alleges that even if the declaration of a misplea is an available remedy under the Utah Code, such a declaration would violate the double jeopardy clauses of both the United States Constitution and the Utah Constitution.

¶ 17 We conclude that M.R. was entitled to appellate review of the district court's rulings related to his right to be heard. We further hold that M.R., as the victim of a crime, had both a constitutional and statutory right to be heard at defendant's change of plea hearing and that he properly invoked this right by informing the prosecutor that he desired to be heard. Finally, we conclude that the court remedied its initial violation of M.R.'s right to be heard at defendant's change of plea hearing by reopening the plea hearing and receiving testimony from M.R. and his mother, and by permitting argument from M.R.'s counsel.

### ANALYSIS

### I. THE VICTIMS' RIGHTS AMENDMENT, THE VICTIMS' RIGHTS ACT, AND THE RIGHTS OF CRIME VICTIMS ACT

¶ 18 In 1987, the Utah Legislature enacted the Victims' Rights Act. *See* Utah Code Ann. §§ 77–37–1 to –5 (1999). This statute included, among other things, a bill of rights for victims, *id.* § 77–37–3, and declared that these rights must be "protected in a manner no less vigorous than protections afforded criminal defendants." *Id.* § 77–37–1. The Utah Legislature then passed the Victims' Rights Amendment, which was ratified by Utah citizens on November 8, 1994, and took

---

4. Defendant asserts in his brief that he has served the sentence imposed by the district court.

Neither the State nor M.R. disputes this assertion. We therefore presume it to be true.

effect on January 1, 1995.[5] Utah Const. art. I, § 28 compiler's notes. This constitutional amendment bestowed specific rights upon crime victims and gave the Utah Legislature the power to "enforce and define [its terms] by statute." Acting pursuant to this authority, the Utah Legislature subsequently enacted the Rights of Crime Victims Act. Utah Code Ann. §§ 77–38–1 to –14 (1999 & Supp. 2001). This act elaborated upon the rights afforded crime victims under the Victims' Rights Amendment and defined several terms included in the amendment.[6] *Id.*

## II. APPLICABLE STANDARD OF REVIEW

■ ¶ 19 Because this appeal asks us to analyze one of the rights afforded crime victims (i.e., M.R.'s right to be heard at defendant's change of plea hearing), we are called upon to interpret the meaning of the Victims' Rights Amendment, the Victims' Rights Act, and the Rights of Crime Victims Act. Because interpreting the Utah Constitution and the Utah Code presents questions of law, we review these questions for correctness and give no deference to the district court's legal conclusions. *See Cache County v. Property Div. of the Utah State Tax Comm'n,* 922 P.2d 758, 766 (Utah 1996).

## III. CONSTITUTIONAL AND STATUTORY INTERPRETATION

■ ¶ 20 In accordance with the analytical hierarchy relative to constitutions and statutes, we first examine the textual language of the Victims Rights Amendment and look secondly to the Victims' Rights Act and the Rights of Crime Victims Act. In construing the Victims' Rights Amendment, we initially scrutinize the plain meaning of the constitutional provision. *See Utah Sch. Bds. Ass'n v. Utah State Bd. of Educ.,* 2001 UT 2, ¶ 13, 17 P.3d 1125. We need not inquire beyond the plain meaning of the amendment unless we find it ambiguous. *Id.* Our inquiry is similar in reviewing the Victims' Rights Act and the Rights of Crime Victims Act. *See State v. Ostler,* 2001 UT 68, ¶ 7, 31 P.3d 528. As with our constitutional analysis, we look first to the plain meaning of the statutes and go no further unless they are ambiguous. *See id.*

## IV. M.R. HAD THE RIGHT TO APPEAL ADVERSE RULINGS RELATED TO HIS MOTION FOR A MISPLEA AND HIS MOTION TO REJECT THE PLEA BARGAIN

■ ¶ 21 Applying the principles outlined above, we first address whether M.R. had the

---

5. Although Article I, Section 28 of the Utah Constitution is titled "Declaration of the rights of crime victims," it is commonly referred to as the Victims' Rights Amendment. In full, the Victims' Rights Amendment declares as follows:

(1) To preserve and protect victims' rights to justice and due process, victims of crimes have these rights, as defined by law:

(a) To be treated with fairness, respect, and dignity, and to be free from harassment and abuse throughout the criminal justice process;

(b) Upon request, to be informed of, be present at, and to be heard at important criminal justice hearings related to the victim, either in person or through a lawful representative, once a criminal information or indictment charging a crime has been publicly filed in court; and

(c) To have a sentencing judge, for the purposes of imposing an appropriate sentence, receive and consider, without evidentiary limitation, reliable information concerning the background, character, and conduct of a person convicted of an offense except that this subsection does not apply to capital cases or situations involving privileges.

(2) Nothing in this section shall be construed as creating a cause of action for money damages, costs, or attorney's fees, or for dismissing any criminal charge, or relief from any criminal judgment.

(3) The provisions of this section shall extend to all felony crimes and such other crimes or acts, including juvenile offenses, as the Legislature may provide.

(4) The Legislature shall have the power to enforce and define this section by statute.
Utah Const. art. I, § 28.

6. Utah is one of many states that afford rights to crime victims. In the early 1970's, a victims' rights movement spread across the United States and focused on integrating victims of crimes into the criminal justice process. *Ex Parte Littlefield,* 343 S.C. 212, 540 S.E.2d 81, 83 (2000). Responding to this movement, many legislatures across the country enacted statutes affording victims a voice at critical stages of the criminal justice process. *Id.* (citing Peggy M. Tobolowsky, *Victim Participation in the Criminal Justice Process: Fifteen Years After the President's Task Force on Victims of Crime,* New Eng. J. On Crim. & Civ. Confinement 21 (Winter 1999)).

right to appeal the district court's rulings regarding his right to be heard. The Victims' Rights Amendment does not address the question of M.R.'s right to appeal decisions impacting his right to be heard. The Rights of Crime Victims Act is on point, however, and we conclude that M.R. had the right to seek appellate review pursuant to the plain meaning of that statute. *See* Utah Code Ann. § 77–38–11(2)(b)(c) (1999).

¶ 22 We resolve this issue under a plain meaning analysis for two reasons. First, subsection 77–38–11(2)(b) explicitly provides that "[a]dverse rulings on ... a motion or request brought by a victim of a crime or a representative of a victim of a crime may be appealed under the rules governing appellate actions, provided that no appeal shall constitute grounds for delaying any criminal ... proceeding." *Id.* § 77–38–11(2)(b). Second, subsection 77–38–11(2)(c) of the Utah Code declares that "[a]n appellate court shall review all such properly presented issues, including issues that are capable of repetition but would otherwise evade review." *Id.* § 77–38–11(2)(c). In short, these two provisions demonstrate (1) that crime victims possess the right to appeal rulings on motions related to their rights as a victim and (2) that an appellate court must review appeals of such a nature. Accordingly, M.R.'s appeal is properly before us.

## V. M.R. POSSESSED A CONSTITUTIONAL AND STATUTORY RIGHT TO BE HEARD UPON REQUEST AT IMPORTANT CRIMINAL JUSTICE HEARINGS

### A. *Defendant's Change Of Plea Hearing Constituted An Important Criminal Justice Hearing Under Both The Utah Constitution And The Utah Code*

¶ 23 We next address whether M.R. had the right to be heard at defendant's change of plea hearing. We conclude that he did, upon request, have such a right pursuant to the plain meaning of the Victims' Rights Amendment and subsections 77–38–4(1) and

77–38–2(5)(c) of the Rights of Crime Victims Act.

¶ 24 In pertinent part, the Victims' Rights Amendment states as follows:

(1) To preserve and protect victims' rights to justice and due process, *victims of crimes have [the right]:*

. . .

(b) *Upon request, to be ... heard at important criminal justice hearings related to the victim,* either in person or through a lawful representative, once a criminal information or indictment charging a crime has been publicly filed in court[.]

Utah Const. art. I, § 28(1)(b) (emphasis added). Using comparable language, section 77–38–4 of the Rights of Crime Victims Act similarly declares that "[t]he victim of a crime shall have ... the right to be heard at ... important criminal ... justice hearings...." Utah Code Ann. § 77–38–4(1) (1999).

¶ 25 Given that both the Utah Constitution and the Utah Code grant crime victims the right to be heard at "important criminal justice hearings," the question that arises is what constitutes an "important criminal justice hearing" under the Victims' Rights Amendment and the Utah Code. Section 77–38–2 of the Rights of Crime Victims Act answers this question with respect to both the Utah Constitution and the Utah Code;[7] it defines "important criminal justice hearings" involving the disposition of charges in this way:

For the purposes of this chapter and the Utah Constitution[,][i]mportant criminal justice hearings ... means the following proceedings in felony criminal cases ...: any court proceeding involving the disposition of charges against a defendant [except for] unanticipated proceedings to take an admission or a plea of guilty as charged to all charges previously filed or any plea taken at an initial appearance.

Utah Code Ann. § 77–38–2(5)(c) (1999). Thus, the plain language of the statute defines "important criminal justice hearings" as any proceeding involving the disposition of

---

7. Article I Section 28 of the Utah Constitution gives "[t]he [Utah] Legislature ... the power to enforce and define [the Victims' Rights Amendment] by statute." Utah Const. art. I, § 28(4).

felony charges against a defendant, with two notable exceptions: (1) a plea taken at an initial appearance and (2) a proceeding in which a defendant accepts responsibility for all of the charges previously filed.[8] *Id.*

¶ 26 Here, the change of plea hearing conducted by the district court fell within the definition of an important criminal justice hearing because it disposed of a first degree felony charge filed against defendant in return for a guilty plea on a class A misdemeanor. Further, neither exception applied because the hearing was not an initial appearance and the defendant did not accept responsibility for the first degree felony charge previously filed. Accordingly, M.R.'s constitutional and statutory right to be heard upon request at important criminal justice hearings included the right to be heard upon request at defendant's change of plea hearing.

B. *M.R. Invoked His Right To Be Heard At Defendant's Change Of Plea Hearing By Informing The Prosecutor That He Wished To Speak*

¶ 27 While it is clear that the Utah Constitution and the Utah Code afforded M.R. the right to be heard upon request at defendant's change of plea hearing, *see* Part V(A) *supra,* neither the constitution nor the code mandates how M.R.'s request must be submitted. Relying on the Victims' Rights Act and the Rights of Crime Victims Act, M.R. argues that a request to be heard at a plea hearing suffices if it is submitted either to the district court or to the prosecutor. The State contends that the two statutes require a crime victim to petition the court directly. After examining the relevant constitutional and statutory authority, we are satisfied that a victim's right to be heard at a plea hearing is triggered where a request has been submitted to the prosecutor handling the case.

¶ 28 We begin our analysis with the Victims' Rights Amendment. This constitutional provision merely notes that the right to be heard is activated "upon request." Utah Const. art. I, § 28(b). Unlike the previous

constitutional language we have analyzed, we find this language ambiguous and undefined. We thus "consider all other relevant factors." *In re Inquiry Concerning a Judge, the Honorable David S. Young,* 1999 UT 6, ¶ 15, 976 P.2d 581. In particular, we seek guidance from the statutes related to the Victims' Rights Amendment (i.e., the Victims' Rights Act and the Rights of Crime Victims Act). *Cf. In re Worthen,* 926 P.2d 853, 867 (Utah 1996).

¶ 29 The Victims' Rights Act states that "[v]ictims ... have [the] right to be informed and assisted as to their role in the criminal justice process[, and *a]ll criminal justice agencies have the duty to provide this information and assistance.*" Utah Code Ann. § 77–37–3(1)(b) (Supp.2001) (emphasis added). Additionally, the Victims' Rights Act declares that "[v]ictims ... have a right to clear explanations regarding relevant legal proceedings[, and *a]ll criminal justice agencies have the duty to provide these explanations.*" *Id.* § 77–37–3(1)(c) (Supp.2001) (emphasis added). Because prosecutors are a component of the criminal justice system and the Victims' Rights Act applies to "all criminal justice agencies," the aforementioned duties necessarily fall upon prosecutors. *Id.* § 77–37–3(1)(b)–(c). Hence, we conclude that prosecutors must "assist" victims in exercising their right to be heard at plea hearings and provide them with "clear explanations regarding [such] proceedings." *Id.*

¶ 30 We further conclude that a prosecutor's obligation to provide "assistance" to the victim should mean, at a minimum, that a victim may submit a request to be heard at a plea hearing to a prosecutor and expect that the request will be forwarded to the court. Likewise, a prosecutor's obligation to provide a "clear explanation" of events occurring at a plea hearing should mean that a victim can rely on a prosecutor's statement indicating he or she will convey a request to be heard to the district court. We therefore hold that a victim may deliver a request to be heard at a plea hearing to a

---

**8.** Subsection 77–38–2(5) of the Rights of Crime Victims Act delineates other proceedings that qualify as important criminal justice hearings. *See* Utah Code Ann. § 77–38–2(5)(a), (b), (d)-(g).

prosecutor and that a prosecutor receiving such a request must convey it to the court.

¶ 31 This conclusion is supported by the text of the Rights of Crime Victims Act because that statute, while explicitly mandating direct requests in some instances, does not require direct requests to be heard at plea hearings. For example, a victim's request to be heard at an accused's initial appearance is predicated expressly upon delivering a "request to the judge hearing the matter." Utah Code Ann. § 77–38–4(1) (1999). This same section, however, conveys a broad right to be heard at various legal proceedings—including plea hearings—without mentioning how the request to be heard must be made.[9] *Id.* Had the Utah Legislature intended to require victims to petition the district court directly in order to invoke their right to be heard at plea hearings, it could have inserted the phrase, "upon request to the judge," into that sentence as well. *Cf. State v. Chaney,* 1999 UT App. 309, ¶ 46, 989 P.2d 1091 (concluding that, due to the placement of the word "intentionally," the Utah Legislature intended to modify only one verb rather than the entire sentence). We conclude that by electing not to incorporate this phrase when referring to plea hearings the Legislature implicitly authorized other methods of delivering requests to be heard. Accordingly, the language of the Rights of Crime Victims Act contradicts the State's theory that requests to be heard at a plea hearing must be delivered directly to the district court.[10]

¶ 32 In addition to having a duty to convey requests to be heard under the Victims' Rights Act and the Rights of Crime Victims Act, prosecutors also have a duty to convey requests to be heard as officers of the court. Prosecutors must convey such requests because they are obligated to alert the court when they know that the court lacks relevant information. *Cf. Clingman v. State,* 23 P.3d 27, 29 (Wyo.2001). This duty, which is incumbent upon all attorneys, is magnified for prosecutors because, as our case law has repeatedly noted, prosecutors have unique responsibilities. *See, e.g., State v. Thomas,* 1999 UT 2, ¶ 24 n. 3, 974 P.2d 269. Specifically, a prosecutor is a minister of justice, *id.,* possessing "duties that rise above those of privately employed attorneys." *State v. Saunders,* 1999 UT 59, ¶ 31, 992 P.2d 951. The prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest ... in a criminal prosecution is not that it shall win ... but that justice shall be done." *State v. Emmett,* 839 P.2d 781, 787 (Utah 1992).

¶ 33 In light of the fact that prosecutors must defend and uphold the State's interest in procuring justice, they have an obligation to ensure that the constitutional rights of crime victims are honored and protected. In fact, the Victims' Rights Act explicitly declares that the rights extended to crime victims "are to be honored and protected by law in a manner no less vigorous than protections afforded criminal defendants." Utah Code Ann. § 77–37–1 (1999). Accordingly, as an officer of the court, a prosecutor must convey a victim's request to be heard at a change of plea hearing.

¶ 34 It is undisputed by the parties to this appeal that M.R.'s mother, acting on

---

9. In relevant part, subsection 77–38–4(1) of the Utah Code states as follows:
   The victim of a crime shall have ... the right to be heard at the important criminal ... justice hearings provided in Subsections 77–38–2(5)(b), (c), (d), and (f), and upon request to the judge hearing the matter, the right to be present and heard at the initial appearance of the person suspected of committing the conduct or criminal offense against the victim on issues relating to whether to release a defendant or minor and, if so, under what conditions release may occur.
   Utah Code Ann. § 77–38–4(1) (1999).

10. A second section in the Rights of Crime Victims Act similarly requires that certain requests be delivered to the district court. Subsection 77–38–4(8) provides that "[i]f the victim of a crime is a person who is in custody ... the right to be heard ... shall be exercised by submitting a written statement to the court." Utah Code Ann. § 77–38–4(8) (1999). The Utah Legislature therefore evinced a clear intent to require victims to petition the court directly in two separate contexts but chose not to impose a similar requirement with respect to a victim's right to be heard at plea hearings.

behalf of M.R., informed the prosecutor that M.R. wished to be heard at defendant's change of plea hearing. It is also undisputed that the prosecutor did not convey this request to the district court. Consistent with our foregoing analysis, we conclude that the prosecutor failed to satisfy the obligations imposed upon him by the Victims' Rights Act, the Rights of Crime Victims Act, and his position as an officer of the court.

¶ 35 To begin with, as a representative of a criminal justice agency, the prosecutor violated M.R.'s rights under the Victims' Rights Act (1) by failing to "assist" him in exercising his right to be heard and (2) by failing to provide him with a "clear explanation" regarding the events transpiring at defendant's change of plea hearing. Utah Code Ann. § 77–37–3(1)(b)–(c) (1999). The prosecutor violated both of these statutory duties when he implied that he would convey M.R.'s request to be heard to the district court and then failed to do so.

¶ 36 Moreover, given that the prosecutor received M.R.'s request to be heard and subsequently made no effort to alert the district court, the prosecutor's conduct violated the Rights of Crime Victims Act. That statute, by requiring direct requests to the court at initial appearances but not requiring such direct requests at plea hearings, implicitly authorized requests to be heard at plea hearings to be delivered to prosecutors.

¶ 37 Lastly, the prosecutor breached his duty as an officer of the court because he failed to bring relevant information to the court's attention. See Clingman, 23 P.3d at 29. Fully aware of M.R.'s desire to speak at defendant's change of plea hearing, the prosecutor did not inform the court that M.R. had

invoked his constitutional and statutory right to be heard. We therefore conclude that M.R. properly submitted his request to be heard at defendant's change of plea hearing to the prosecutor.[11]

## VI. THE DISTRICT COURT REMEDIED THE VIOLATION OF M.R.'S RIGHT TO BE HEARD

¶ 38 Based on the prosecutor's failure to relay M.R.'s request to be heard, the district court initially deprived M.R. of his right to speak at the change of plea hearing. At defendant's sentencing hearing, however, the court learned of M.R.'s earlier desire to be heard. The court then permitted M.R. and his mother to take the stand and testify regarding the appropriateness of defendant's plea bargain. The court also permitted extensive argument by M.R.'s counsel. Restricted in no respect by the court, all three individuals claimed that the plea bargain should have been rejected. After hearing this testimony and argument, the court "informally" reopened defendant's change of plea hearing and accepted the testimony that it had just heard from M.R. and his mother. The court then reaffirmed defendant's plea at the Class A level.[12]

¶ 39 By taking these steps, the district court remedied its initial denial of M.R.'s right to be heard. Our conclusion is based on the following rationale. First, we note that the plea was subject to review up until the time of sentencing. See Ostler, 2001 UT 68 at ¶ 10, 31 P.3d 528 (noting that "it makes no sense to deprive the district court of the power to review a plea before it enters a judgment of conviction and sentence."). Accordingly, in exercising its power to reopen

11. As part of the disposition of this case, M.R. urges us to order the redrafting of rule 11 of the Utah Rules of Criminal Procedure and mandate that district courts ask whether a victim wishes to be heard at plea hearings. We note that it is sound judicial practice for a judge to inquire into the victim's desires at plea hearings, but decline to require such a question under rule 11.

12. At the sentencing hearing, the district court made the following remarks:
[I have] heard from the victim and ... been informed by the victim and the victim's representative, i.e., the victim's mother, that [I] was

not informed of the desire or request of the victim to be heard at the time the plea was taken. [I] will informally reopen the plea for the purpose of hearing that testimony, which I've already heard.... [I] find[ ] that the prosecutor should have, does have and did have in this case ... discretion in his negotiations with the defense attorney. They entered into that agreement with sound legal considerations that they alone basically negotiated.... [I now] accept[ ] and reaffirm[ ] the plea at the Class A level and den[y] any request to the contrary.

the plea, the court permitted M.R. to be heard at a time when he could have persuaded the court to reject the proposed plea. Second, the record clearly demonstrates that the court reaffirmed the plea only after having accepted M.R.'s and his mother's testimony, and permitting argument by his counsel.[13]

¶ 40 Thus, although M.R. was entitled to be heard at defendant's change of plea hearing, we conclude that he has enjoyed the fruits of the right he now claims he was denied. Accordingly, we hold that the district court, to its credit, cured the error initially committed at the change of plea hearing and honored M.R.'s right to be heard as soon as it discovered M.R. wished to be heard.[14]

## CONCLUSION

¶ 41 We conclude that M.R. (1) had the right to appeal the district court's rulings related to his right to be heard, (2) had the right to be heard upon request at defendant's change of plea hearing, and (3) properly invoked his right to be heard by informing the prosecutor he wished to speak. We further conclude that, although the prosecutor failed to convey M.R.'s request to the court and this failure initially deprived M.R. of his right to be heard at defendant's change of plea hearing, the court subsequently remedied the error. The court did so by reopening the plea hearing, accepting unrestricted testimony and argument, and reaffirming the plea. We therefore affirm the decision below.

13. In this appeal, M.R. asks us to hold that he had the right to speak through counsel at the change of plea hearing. We need not reach this question because (1) the district court did, in fact, permit M.R.'s counsel to speak at that hearing, and (2) neither the State nor the defendant has challenged the district court's decision. Accordingly, there is no bona fide dispute regarding this issue, and it is not ripe for review. *See State v. Herrera*, 895 P.2d 359, 371 (Utah 1995) (explaining that we do not examine controversies that have not "yet sharpened into an actual or imminent clash of legal rights and obligations between the parties thereto." (internal quotation omitted)). We therefore decline to address it.

14. Because the district court upheld M.R.'s right to be heard in the present case, we decline to

¶ 42 Chief Justice HOWE, Associate Chief Justice RUSSON, and Justice DURHAM concur in Justice DURRANT's opinion.

WILKINS, Justice, concurring:

¶ 43 I concur in the result reached in the majority opinion. However, I would affirm the trial court's action only because the conflict between two constitutional principles gives us no other choice. At the time the motion was made, however, the trial court could have, and under the mandate of our constitution should have, granted M.R.'s motion for a misplea.

¶ 44 I fully agree with the analysis set forth in the majority opinion leading to the conclusions that M.R. was entitled to appellate review of the district court's adverse rulings, and that, as a victim of crime, he had both a constitutional and statutory right to be heard at defendant's change of plea hearing. I also agree fully that M.R., in informing the prosecutor of his desire to be heard, did everything necessary to properly invoke his right. However, I believe that when the trial court was finally informed of M.R.'s desire to be heard, it was clearly insufficient for the trial court to "informally" reopen the change of plea hearing and "consider" M.R.'s concerns before summarily reaffirming the "accepted" plea. Doing so merely compounded the error invited by the prosecution in failing to promptly inform the court of M.R.'s initial request to be heard at the change of plea hearing.

¶ 45 As we today hold, M.R. clearly had a constitutional right to speak prior to the acceptance of the change of plea in this case.

address what remedies are available for the hypothetical denial of a victim's right to be heard. We do note, however, that the Utah Legislature established a framework in which only three remedies were provided for the violation of a victim's right: injunctive relief, declaratory relief, and writ of mandamus. Utah Code Ann. § 77–38–11(1)–(2)(i) (1999). Absent from this list is the right to obtain a declaration of a misplea. Moreover, even if the declaration of a misplea were assumed to be an available remedy, such a declaration would raise constitutional issues regarding the double jeopardy clauses of both the United States Constitution and the Utah Constitution.

Under our decision in *State v. Ostler*, 2001 UT 68, ¶ 10, 31 P.3d 528, defendant's plea had not yet been finally accepted at the time the trial court became aware of M.R.'s desire to be heard on the matter. The correct course would have been for the trial court to reopen the hearing, after notice to all concerned.

¶ 46 The constitutional provisions granting M.R. his right to be heard, however, also limit this right. Subsection (2) of the Victims' Rights Amendment, Article I, Section 28 of the Utah Constitution, specifically prohibits construing the rights afforded M.R. in such a way as to provide "relief from any criminal judgment." The defendant's plea, *once accepted by the court and sentence imposed*, is a criminal judgment. Consequently, once the trial court accepted defendant's plea and entered the judgment of sentence on the plea, M.R.'s rights as a victim could not result in the "misplea" M.R. sought. Only while the plea was still not final, that is, prior to the entry of sentence, could M.R.'s motion for misplea have been granted on the basis of M.R. having been denied his constitutional right to speak at the change of plea hearing.

¶ 47 A second difficulty is created by the provisions of the Rights of Crime Victims Act, Utah Code Ann. § 77–38–11(2)(1999), that authorize appellate review of an adverse ruling by the trial court on M.R.'s motions, but specifically provide that no such appeal "shall constitute grounds for delaying any criminal ... proceeding." § 77–38–11(2)(b). When juxtaposed with the rights of the criminal defendant to a speedy trial and the necessity to move forward with the criminal process despite an otherwise valid appeal by a victim, appellate relief for M.R. is a practical impossibility. Moreover, the same statute limits M.R.'s remedies to injunctive relief, declaratory relief, and writ of mandamus. § 77–38–11(1)(2). If the criminal action proceeds, and if the victim is denied his or her constitutional right to address the court, the victim has little hope of a meaningful remedy. While the criminal proceeding moves forward, the victim denied rights may seek only an injunction or writ of mandamus that will preserve the right to speak if such an appeal can be filed, perfected, heard, and decided before entry of the criminal judgement. This will often not be the case. This was clearly not the case in M.R.'s situation.

¶ 48 So, our hands are tied by the same constitutional and statutory provisions that gave M.R. his right to be heard in the first place. We cannot order the plea "undone" once the sentence and judgment have been entered by the trial court. We cannot impose any corrective action on the failure of the prosecutor to inform the court of the request to speak, or the failure of the trial court to fully reconsider the change of plea, with all due formality, thereby according M.R. his constitutional right to actually be heard.

¶ 49 As it works in practice, the right of a victim to be heard at a change of plea hearing is fragile at best, and may be made illusory by the intentional or unintentional mishandling of the situation by the prosecutor or the trial court, all without meaningful remedy. Perhaps the legislature may find it wise to reconsider the provisions of the statute addressing appellate review of the denial of a victim's request to assert the rights granted by the Victims' Rights Amendment. There may be other circumstances under which those rights may be just as easily and negligently denied as were M.R.'s in this case.