**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Bowen Gray Turner, Respondent.

In re: Victim C.B., Appellant.

Appellate Case No. 2022-000472

———————

Appeal From Orangeburg County
R. Markley Dennis, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-013
Heard September 10, 2024 – Filed January 15, 2025

———————

**DISMISSED**

———————

Meliah Bowers Jefferson, of Wyche, PA, of Greenville;
Terri Hearn Bailey and Sarah Anne Ford, both of the
South Carolina Victim Assistance Network, of Columbia;
and Tamika D. Cannon, of the South Carolina Victim
Assistance Network, of Taylors, all for Appellant.

Attorney General Alan McCrory Wilson, Senior
Assistant Attorney General Mark Reynolds Farthing,
both of Columbia; and Solicitor John William Weeks, of
Aiken, all for Respondent the State.

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Respondent Bowen Gray Turner.

**PER CURIAM:**  Bowen G. Turner pled guilty to first-degree assault and battery of Victim C.B. (Victim).  Victim appeals the plea court's denial of her motion to enforce victims' rights, her rule to show cause against Illery Bail Bonding Company, and her petition for a writ of mandamus.

## FACTS/PROCEDURAL HISTORY

On June 2, 2019, Bowen Turner sexually assaulted Victim in Orangeburg County. Authorities arrested and charged him with first-degree criminal sexual conduct (CSC) on June 12.[1]  At the time of Victim's assault, Turner was out on bond for first-degree CSC of a *different* victim in Bamberg County.[2]  The magistrate court and the circuit court subsequently denied Turner's motion for bond.  Upon turning seventeen, Turner renewed his motion for bond, asserting a change of circumstances based upon his transfer from the Department of Juvenile Justice (DJJ) to the Orangeburg-Calhoun Regional Detention Center.  The circuit court granted Turner's renewed motion for bond and released him on home detention with GPS monitoring.  The bond order specified:

> ANY and ALL violations of the conditions of HOME DETENTION shall be reported to the Second Circuit Solicitor's Office or the Orangeburg County Sheriff's Office within 24 hours of the violation.  FAILURE TO COMPLY WITH THIS NOTIFICATION REQUIREMENT WILL SUBJECT THE ELECTRONIC MONITORING COMPANY TO POTENTIAL CRIMINAL AND CIVIL SANCTIONS FOR CONTEMPT OF COURT.

The court further ordered, "If the Defendant is observed violating any term or condition of this Order, any law enforcement agency is hereby authorized by this Order to *immediately* take the Defendant into custody and to hold the Defendant in

---

[1] At the time of his arrest, Turner was sixteen years old.
[2] The victim of the Bamberg County assault is now deceased, and the State dismissed the charges after her death.

custody pending a hearing on the alleged violation(s) of this Order." (emphasis added).

From the beginning of November 2021 through February 2022, Turner violated the terms of his home arrest *at least fifty times*, going to multiple golf courses, restaurants, shops, friends' houses, etc. In violation of the bond order, the GPS monitoring company failed to notify the State of Turner's violations. On Victim's request, the South Carolina Law Enforcement Division (SLED) obtained Turner's GPS records from Illery Bonding Company on March 2, 2022. Contrary to the terms of the bond order, authorities did not arrest Turner; rather, the solicitor's office filed a motion to revoke bond, which was set for a hearing on April 8, 2022.

On April 4, 2022, the solicitor's office notified Victim that it planned to make Turner a plea offer to the reduced charge of assault and battery. On April 6, 2022, Victim filed a petition for a writ of mandamus, seeking to compel the State to arrest Turner pursuant to the terms of the bond order; a rule to show cause against Illery Bonding Company for failing to report Turner's violations; and a motion protesting the plea agreement and seeking to enforce Victim's right to be heard. Specifically, Victim sought to be heard prior to the court's acceptance of Turner's plea.

At the beginning of the plea hearing on April 7, the court dismissed Victim's motions as untimely. Victim subsequently moved to continue the plea hearing so that she could comply with the notice requirements cited by the court; the State opposed the continuance, and the plea court denied the motion. Thereafter, Turner pled guilty to the assault and battery of Victim. The State recommended the court sentence Turner, pursuant to the Youthful Offender Act (YOA), to a sentence not to exceed six years' imprisonment suspended to two years' probation.

During the sentencing phase of the hearing, the court allowed Victim's father to speak on her behalf. The father of the Bamberg County victim also made a statement. Both individuals opposed probation, requesting a sentence to fit the gravity of Turner's crime and mandatory registration as a sex offender.

Following the victim impact statements, the plea court sentenced Turner, under the YOA, to a term of imprisonment not to exceed six years suspended upon five years' probation with sex offender counseling. The court specified that should Turner complete all five years without violating the terms of his probation, registration as a sex offender would not be required. In making its sentence, the court reasoned:

I do think the YOA sentence is appropriate for many reasons. Because one, because of what I said about the adult sentence and that doesn't help him. But the YOA, if he has activated, it would at least help him rehabilitate maybe. So that's my rationale for accepting the YOA sentence.

The court further noted,

Common Pleas deals primarily with about 90 percent of what I've heard today. Pain and suffering and tragedy it's caused. The one thing I learned early on, sentences can't be taken as an indication of how bad it was, how much damage was caused, because it has no correlation to it.

Victim subsequently filed a notice of appeal. Thereafter, the State filed a motion to dismiss the appeal, which this court denied.[3]

## LAW/ANALYSIS

Victim argues the plea court erred in denying her motions as untimely and violated her rights afforded by the Victims' Bill of Rights[4] enacted through the South Carolina Victims' Rights Act.[5] Victim seeks "a finding that the [plea] court should have heard from Victim prior to accepting the guilty plea because [failing to] do[] so deprived Victim of an opportunity to be present and be heard regarding the plea."

Although we deeply sympathize with the victims of Bowen Turner's violent crimes, there is no practical remedy this court can offer. Victim's appeal essentially requests an advisory opinion as to when a victim has a right to be heard during a guilty plea, which will have no functional effect on the matter between the parties in this appeal. The only parties with standing to appeal Turner's sentence are Turner and the State.

---

[3] Turner concurred with the State's motion.
[4] S.C. Const. art. I, § 24.
[5] S.C. Code Ann. §§ 16-3-1505 to -1565 (2015 & Supp. 2024).

A victim, . . . , possesses *no* rights in the appellate process. Nothing in our Constitution or statutes provides the "victim" standing to appeal the trial court's order. Additionally, the rights granted by the South Carolina Constitution and statutes are enforceable by a writ of mandamus, rather than direct participation at the trial level.

*Reed v. Becka*, 333 S.C. 676, 681, 511 S.E.2d 396, 399 (Ct. App. 1999). Although the Victims' Bill of Rights confers numerous rights, including the right to be notified of important prosecutorial events such as plea negotiations, it also provides that "failure to comply should not be cause to invalidate or set aside the orders of a court." *State v. Price*, 441 S.C. 423, 446, 895 S.E.2d 633, 645 (2023); *see e.g.*, S.C. Const. art. I, § 24(C)(1) ("A victim's exercise of any right granted by this section is not grounds for dismissing any criminal proceeding or setting aside any conviction or sentence."); § 16-3-1565(B) ("A sentence must not be invalidated because of failure to comply with the provisions of this article.").

Once a criminal case has been resolved and the defendant is sentenced, the alleged victim loses his victim status under the Victims' Bill of Rights. The trial court cannot use the Victims' Bill of Rights to re-open a completed criminal proceeding. Further, even if the solicitor fails to honor the Victims' Bill of Rights during a criminal proceeding, this Court cannot issue a writ of mandamus to re-open a criminal proceeding once it is resolved.

*Ex parte Littlefield*, 343 S.C. 212, 221, 540 S.E.2d 81, 85 (2000). Our appellate courts have consistently applied this principle. *See Price*, 441 S.C. at 446–47, 895 S.E.2d at 645 (holding the State's failure to notify victims of a proceeding that reduced the defendant's murder sentence violated the Victims' Bill of Rights and Victims' Rights Act but declining to grant relief); *Littlefield*, 343 S.C. at 223, 540 S.E.2d at 87 (refusing "to re-open a case" based on violations of the Victims' Rights Act); *id.* at 219, 540 S.E.2d at 85 (providing that "a victim's rights under the Victims' Bill of Rights terminate when the criminal proceedings . . . against the alleged perpetrator are resolved").

Consequently, the lack of standing and meaningful relief renders the instant case moot, necessitating dismissal of the appeal. *See Sloan v. Greenville County*, 356 S.C. 531, 552, 590 S.E.2d 338, 349 (Ct. App. 2003) (alteration in original) ("A

case becomes moot when judgment, if rendered, will have no practical legal effect upon [the] existing controversy." (quoting *Curtis v. State*, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001))); *id.* ("[C]ases or issues which have become moot or academic in nature are not a proper subject of review." (quoting *Wallace v. City of York*, 276 S.C. 693, 694, 281 S.E.2d 487, 488 (1981)).

**DISMISSED.**

**WILLIAMS, C.J., and MCDONALD and TURNER, JJ., concur.**